A. S. Johnson, J.
The question in this case is whether the evidence of the contract of sale is sufficient to satisfy the terms of the statute of frauds, relative to the sale of lands. The statute declares void every contract for the sale of lands, unless it, or some note or memorandum of it expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made, or by his agent lawfully authorized. (2 R. S., 135, §§ 8, 9.) The memorandum of the contract in this case was held to be defective upon two grounds: First. That it did not contain the terms and conditions of the sale; and, Second. That there was not a sufficient designation of the lands sold. The validity of the first of these grounds, in its application to this case, depends upon the correctness of the decision that the letter of Tallman to Bleecker, the auctioneer, was not to be deemed a part of the signed memorandum. The letter in question was dated May seventeenth, was headed “ Terms of sale,” was addressed to the auctioneer, and commences with the declaration that “ The following are the *588 terms of sale of the 324 Harlem lots to be sold by you for me to-morrow.” It was signed by Tallman, the person by whose order the sale was to b.e made, and it contains terms of sale sufficiently specific for all legal purposes, and provides for a resale of the property in case of failure on the part of the purchaser,to comply with the terms.
This letter was, before the commencement of the resale on the twenty-fifth day of May, pinned to the page in the auctioneer’s book, upon which the entries of the sales made on that day were made. It was produced at the trial so pinned to the page, and for aught that appeared had continued so annexed from the morning of the sale. The page of the auctioneer’s book shows by the entries upon it that it is a memorandum of an auction sale of Harlem building lots which had been sold on the eighteenth, and which on the twenty-fifth were resold at the risk of the purchasers, who had failed to comply with the terms of the previous sale, and that the sale was made by Bleecker as auctioneer, by order of Tallman. Upon the page a column headed terms of sale was blank. If the letter in question had been copied upon this page under the heading, terms of sale, there could have been no difficulty in collecting from its expressions the terms of- sale by legal construction; nor could any difficulty have arisen if the letter had been made fast to the page by gum or wax or wafer, although in each of these cases the papers could have been separated with more or less of ease. I do not see that papers fastened together by a pin are in any different position in legal effect. That sort of annexation is not so difficult to destroy as some others, but the greater or less difficulty of separation is not the question. The point is whether the two papers were signed as one by the signature of the auctioneer. As they were pinned together; as together they contain the terms necessary to a complete contract, as they plainly relate to the same subject, they ought to be construed together as forming one agreement unless some rule of law forbids it. *589 The cases of Hindee v. Whitehouse (7 East, 558), and The First Baptist Church v. Bigelow (16 Wend., 28), were cases in which the papers sought to be connected were not in any way physically joined together, nor did the paper actually signed refer at all to the other which was sought to be connected with it by parol evidence. I am not aware of any cases which have gone further than these, and denied the right of a court to look at papers fastened together in any way for the purpose of seeing whether they together contain the terms of a contract. In this case, the blank column headed “ terms of sale,” is a sufficient reference to the paper pinned to the page containing the terms of sale, and upon the inspection of both papers they appear together to contain a sufficient contract, so far as this point is concerned.
The other ground of the decision under review was that the lots sold were not sufficiently designated. They appear to have been designated as building lots on 132d and 133d streets between 5th and 6th avenues, numbered 132, 133, 134, 135, 154, 155, 156, 157. In point of fact the four first lots were'on 132d-street and the other four on 133d-street. It appears from the memorandum that all the lots to be sold, were Harlem lots, which had been on the 18th sold by Tal man’s order. The case of Parkhurst v. Van Cortland, (1 John. Ch. R., 273; S. C., 14 John., 15), undoubtedly affirms that the memorandum of a contract to satisfy the statute must contain its terms with reasonable certainty, so that the substance of it can be made to appear and be understood from the writing itself without having recourse to parol proof, but the case is not to be understood as requiring any other rule in respect to the competency of parol evidence to be applied to contracts within the statute, than is applicable to written agreements in general. If a deed purports to convey the house and lot on which A. now lives, is is clearly competent to show by parol, what property that description fitted, at the time the language was used. To this extent parol evidence may certainly be resorted to. The decision *590 proceeded upon the ground that no parol evidence was proper, we may, therefore, for the sake of illustration, assume that the plaintiff might have shown such facts as, though perhaps not strictly proved in the case as now presented, are fairly to be collected from the-papers and proofs in evidence. The resale was of certain Harlem lots which had been before sold on the 18th for the same person by the same auctioneer; at that sale nos. 132, 133, 134, & 135, on 132d-street between the 5th and 6th avenues had been sold, and lots corresponding to those numbers existed in that street between those- avenues -but no such lots so numbered existed in 133d-rstreet.’ So also lots 154, 155, .156 & 157, in -133d-slreet existed and had.been sold, while no. such numbers had any application to any- lots .in -132d-streeb. Upon such a state of facts there-is no.difficulty in point of law in attributing the-first four lots to ,132d-street .and the other four to 133d-street. The moment the language employed,, and the. lots sold on. the 18th are regarded together, for the purpose of seeing what the significance of the language is, it is clear that the lot numbers relate, four of them, to 132d-street and the others to 133d-street... In that way they are sensible,in any other they-fail to express a meaning..
Upon the points considered by.the Superior Court and determined in .favor of . the plaintiff, we desire only to add, that the case of Pinckney v. Hagadom, (1 Duer, 89), was affirmed in this court" in July, 1854.
The. judgment should be reversed and a new-trial granted.-
Wright, J.
The appeal- involves -a single question, viz., whether the memorandum of-'sale-was sufficient, .within the statute - of .frauds; The action was -to recover,1 against the purchaser .of. real estate at auction,- the difference between the price which he agreed to pay and the price-at which -it was. subsequently- re-sold.. The property, .which was- city lots, was sold by-BIeecker, an auctioneer, by order of the plaintiffs, .on the. 25th May, 1852.. The defendant "was a *591 bidder at the sale, and eight lots were struck off to him. At the close of' the sales for the day, the auctioneer subscribed a partly printed and partly written memorandum in his book of sales. This memorandum set forth the name of the party owning the lots. They were described as building lots on l-32d and 133d streets, between Fifth and Sixth avenues, numbered 132, 133, 134, 13-5, 152, 154, 155 and 156. The name of the defendant was inserted as the purchaser, at the price of $471 per lot. In the printed form was a caption, “terms.of sale,” which was blank; but before the sale commenced the terms of sale embraced in a letter from Tallman were pinned to the page on which the entry of the sales for the day were made, and which was the memorandum signed by the auctioneer. It was not controverted that the letter was thus attached at the time Bleecker subscribed the memorandum of sales. The defendant not having complied with the terms of the purchase, the lots were re sold. The court ruled that the memorandum was insufficient in law. to authorize a recovery by the plaintiffs, and ordered the complaint to be dismissed. The case fails to state in what respect the judge at the trial deemed the memorandum to be defective. At general term, however the defects were held to be, that the entry in the sales book as subscribed by the auctioneer, contained no statement of the terms and conditions of the sale, and that the description of the lots was too indefinite and uncertain.
The statute avoids every contract for the sale of. lands, or. any interest, in lands, unless the contract,. or some note oi memorandum thereof, expressing the consideration, be in writing, and subscribed by the party by.whom the sale is to be .made, or his agent lawfully authorized. (2 R. S., 135, § 8, 9.) The authority, of Bleecker to make the sale and subscribe the contract in this case was not questioned. The auctioneer was the agent of the owner of the lots to efiect , the sale,. and was lawfully authorized to sign the writing required by the statute of frauds to .give validity to it. The *592 only question properly arising is, whether the instrument subscribed by Bleecker was a contract binding on the plaintiffs, and which could be specifically enforced in a court of equity.
It is undoubtedly true that the writing subscribed should contain all the particulars of a valid contract, capable of being enforced in a court of equity without further or extrinsic proof. The writing itself may contain all the particulars of the contract, or it may refer to some other instrument or writing for a part of them. The instrument subscribed may be partly written and partly printed, and consist of one or more pieces of paper, provided they are attached and form together the contract to which the seller affixes his signature. Had the contents of the letter which contained the conditions of sale been copied on the memorandum under the head “ terms of sale,” instead of being pinned to it at the time of subscribing, it would scarcely have been pretended that the contract was defective in omitting to state the conditions of sale. It seems to me that the letter, attached as it was to the writing subscribed, was intended to be,, and was as much a part of the written contract of sale as though it had been transcribed upon the auctioneer’s sales book. It was made by the seller an integral part of the contract.
Nor do I think there was such an uncertainty in the description of the lots as to render the contract incapable of execution, and therefore void. They are described as building lots, on 132d and 133d streets, between the Fifth and Sixth avenues. The numbers of the lots are given. It is said that there is no designation of the lots belonging severally to each street. Conceding this to be so, still I see no insuperable difficulty in locating them ; besides, the memorandum described them as Harlem lots, resold on account of former purchasers at the sale on the eighteenth of May failing to comply with the terms of sale. Here was a reference to a previous sale, in which the property *593 was minutely described, and the map thereof specially referred to.
The writing subscribed byBleecker, I think was sufficient There certainly can be no force in the objection that he did not attach the designation of agent to his signature, as it was entirely apparent from the writing itself that he was acting'only in that capacity. Nor does the objection that the contract was not subscribed until the entire sales of the lots were completed, rest on any solid foundation.
The judgment of the superior court should be reversed and a new trial ordered.
Judgment accordingly.