FRANK POTTS, as Administrator, etc., Respondent, v. WILLIAM A. HART et al., Appellants.

Under the provisions of the act of 1858 (Chap. 314, Laws of 1858), authorizing executors and administrators to disaffirm contracts made by their testator or intestate, in fraud of creditors, where the testator or intestate died insolvent, and making any person who has received any portion of the estate in fraud of creditors liable therefor, an administrator may disaffirm a chattel mortgage, executed by the deceased in fraud of creditors, and may maintain an action against the mortgagee for property taken by him under the mortgage.

A chattel mortgage is fraudulent and void as to creditors where it was given with a tacit or express understanding and arrangement that the mortgagee may sell and dispose of the mortgaged property, and apply the avails to his own use.

Such an agreement may be inferred from the fact, that the mortgagor does, with the knowledge and assent of the mortgagee, so sell and dispose of the property and apply the avails.

In such an action, plaintiff was allowed to prove a statement, made at the time the mortgage was executed, by an agent of the mortgagees, who acted for them, to the mortgagor, to the effect that it would not affect the latter in any way to give it. *Held* no error; that it was competent as part of the *res gestæ*.

(Argued April 22, 1885 ; decided May 8, 1885.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made April 28, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was brought by plaintiff, as administrator of the estate of Philip Sauerwine, deceased, for the alleged conversion of goods belonging to the estate.

The material facts are stated in the opinion.

*Arthur W. Hickman* for appellants. It is only an agreement made at the time the mortgage was made that affects the validity of the mortgage. (*Southard* v. *Benner*, 72 N. Y. 424; *Russell* v. *Winnie*, 37 id. 591 ; *Brackett* v. *Harvey*, 91 id. 223.) An agreement must be proved. The mere expec-

tation of one party is not enough. It must be the conscious, concurrent assent of both. It must be proved, and not merely suspected, for it is an attempt to establish fraud where innocence is to be presumed, and to contradict by parol the actual written agreement of the parties, and to reduce that to a mere cover and artifice. (*Brackett* v. *Harvey*, 91 N. Y. 223.) A mortgage of all the goods and stock in trade in the store occupied by the mortgagor is valid. (*Conkling* v. *Shelley*, 28 N. Y. 360; Thomas on Mort. 469.) Knowledge of the sales in the absence of proof that they are made pursuant to an agreement will not avoid the mortgage. (*East* v. *Warren*, 42 N. Y. 204.) This mortgage was valid on its face. A mortgage given upon all the property contained in a certain store, without any further description of the article, is a valid mortgage. (Thomas on Mort. 469 ; *Gardner* v. *McEwen*, 19 N. Y. 360; *Conkling* v. *Shelley*, 28 id. 366.) To render the mortgage fraudulent it must appear affirmatively that there were creditors existing at the time the mortgage was made, whose rights were affected by the giving of the mortgage. (*Brackett* v. *Harvey*, 91 N. Y. 227.) To render the mortgage void because of the alleged permission given the mortgagee to sell the property, and use the proceeds, it must appear that the mortgage itself contained an agreement that the mortgagee might sell the mortgaged property, and use the proceeds for his own benefit, or that, at the time of the making of the mortgage, such an agreement was entered into between the parties. (*Chatham Nat. Bk.* v. *O'Brien*, 6 Hun, 231 ; *Southard* v. *Benner*, 72 N. Y. 424; *Bennett* v. *Harvey*, 91 id. 214.) The agreement must be contained in the mortgage, or it must be made at the same time, and it must be an agreement the necessary construction of which permits such sales to be made. (*Chatham Nat. Bk.* v. *O'Brien*, 6 Hun, 231 ; *Brackett* v. *Harvey*, 91 N. Y. 214; *Frost* v. *Warren*, 42 id. 204.)

*Adelbert Moot* for respondent. The plaintiff is expressly authorized by statute to bring this suit. (Session Laws, 1858,

chap. 314; 3 R. S. [7th ed.] 2330; *Southard* v. *Benner*, 72 N.
Y. 424.) The mortgage being upon a stock in trade, sold and
replenished day by day by permission of the mortgagees, and
the proceeds being appropriated by the mortgagor for his own
benefit, the mortgage became and was fraudulent in law as
against plaintiff, who represents the creditors of the intestate.
(1 Phillips on Evidence, Cowen & Hill's notes, 602.) In
drawing an inference from facts proved, regard must always
be had to the facility that appears to be offered for the explana-
tion or contradiction. (1 Phillips on Ev., Cowen & Hill's notes,
599.) The agreement between the parties that the mortgagor
should continue his dealings with and sales of the goods and
stock in trade covered by the mortgage, for his own benefit,
renders the mortgage void as to plaintiff. (*Southard* v. *Ben-
ner*, 72 N. Y. 424; *Griswold* v. *Sheldon*, 4 Seld. 589.) The
retention of possession by the testator of plaintiff raised a pre-
sumption of fraud which is conclusive against defendants, since
they failed to explain that possession, and the mortgagor's sales
of the goods, for his own benefit, upon any other theory. (2
R. S. 136, § 5; 137, § 4; 3 R. S. [7th ed.] 2328, § 5, p. 2329;
17 Am. L. Rev. 350.) The acts and declarations of Dixon
while getting the mortgage, which defendants now try to set
up as a defense, are competent as part of the *res gestæ*. (*Les-
lie* v. *Knickerbocker L. Ins. Co.*, 63 N. Y. 35; *Booth* v. *Cleve-
land*, 74 id. 28; *Hoag* v. *Lamont*, 60 id. 101; *Wild* v. *Mining
Co.*, 59 id. 644.) The defendants cannot seek to use the mort-
gage procured by Dixon as a defense in this action, and at the
same time repudiate his acts and words in obtaining it. By
availing themselves of it they ratify his acts and words in get-
ting it. (*Sturgis* v. *N. J. S. Co.*, 62 N. Y. 625.)

EARL, J. On the 25th day of January, 1879, plaintiff's
intestate, Sauerwine, being indebted to the defendants in the
sum of $3,323.22, upon fifteen promissory notes falling due,
between the date of the mortgage and the 25th day of May,
thereafter, executed to them a mortgage on all the goods and
merchandise in his store in the city of Buffalo, where he car-

ried on the business of a practical plumber and gas-fitter, the property being such articles as were necessary to conduct his business. * The mortgage was filed in the office of the county clerk of Erie county, on the 3d day of February. The mortgagor died on the 15th day of April, and in May the plaintiff was appointed administrator of his estate. Thereafter, on the 29th day of May, default having been made in the payment of all the notes secured by the mortgage, the defendants took from the possession of the plaintiff so much of the goods and merchandise mortgaged as they could find in the store formerly occupied by the intestate; and then the plaintiff commenced this action for the conversion of the goods, which were alleged and admitted to be of the value of $939.37. The defendants justified the taking under their mortgage, and the plaintiff claimed that the mortgage was fraudulent and void as to creditors, and asserted his right to avoid it under the act chapter 314 of the Laws of 1858.

At the time of giving the mortgage and at the time of his death Sauerwine was insolvent and unable to pay his debts, and other persons beside the defendants had claims against him, which at the time of his death were and still remain wholly unpaid. The plaintiff claimed that the mortgage was void, because at the time of the execution thereof, there was an understanding that the mortgagor should continue his dealings with and sales of the mortgaged property for his own benefit as before, notwithstanding the mortgage; and upon that ground the judge at Special Term held that the mortgage was void, and his decision was affirmed at the General Term. The claim on the part of the defendant is that there was no sufficient proof of an arrangement contemporaneous with the mortgage, that the mortgagor might continue to sell the property for his own benefit.

While the proof was not very strong or conclusive, we think there was sufficient for the consideration of the trial judge and that his decision is binding upon us. Sauerwine, for some years, had been engaged in the same business, and during all the years had dealt with the defendants who were wholesale

dealers in gas-fitting and plumbing goods. It was clearly not intended that he should go out of business. It cannot be inferred that the defendants expected that he would discontinue sales of the mortgaged property, and no just inference can be drawn that they expected him to apply the proceeds of the sales upon their mortgage. At the time the mortgage was given, one Dixon, the book-keeper of the defendants, who seems to have been their agent in procuring the mortgage, stated to Sauerwine that it would not affect him in any way to give the mortgage. Immediately after the mortgage was given Sauerwine continued selling the goods and conducting his business as before with the knowledge of defendants, and before his death he had disposed of about two-thirds of the mortgaged property. He continued to buy goods of the defendants during the same time to replenish the stock in his store, and yet not one cent of the proceeds of the sales was applied upon the defendants' mortgage. It may be inferred from the evidence that the defendants received cash for the goods they supplied him after the mortgage was given ; but they received nothing whatever upon their mortgage, although several of the notes must have fallen due. Hence, from the very nature of the transaction and from the facts stated, it seems to us that the inference was justifiable that the mortgage was given with a tacit or express understanding and arrangement between the parties that the mortgagor should be permitted to do exactly what he did do — deal in the property for his own benefit. That such a state of facts rendered the mortgage fraudulent and void as to creditors cannot be disputed. ( *Wood* v. *Lowry,* 17 Wend. 492; *Chatham Bank* v. *O'Brien,* 6 Hun, 231 ; *Griswold* v. *Sheldon,* 4 N. Y. 584; *Gardner* v. *McEwen,* 19 id. 123; *Russell* v. *Winne,* 37 id. 591 ; *Southard* v. *Benner,* 72 id. 424; *Brackett* v. *Harvey,* 91 id. 214.)

A mortgage thus given is fraudulent and void as to creditors because it must be presumed that at least one of the purposes, if not the main purpose for giving it, was to cover up the mortgagor's property and thus hinder and delay his other creditors. It matters not whether the agreement that the mortgagor may

continue to deal in the property for his own benefit is contained in the mortgage or exists in parol outside of it; and where the agreement exists in parol, it matters not whether it is valid so that it can be enforced between the parties or not; for whether valid or invalid, it is equally effectual to show the fraudulent purpose for which the mortgage was given, and the fraudulent intent which characterizes it.   It is always open to creditors to assail, by parol evidence, a mortgage or a bill of sale of property as fraudulent and void as to them.   While between the parties the written contract may be valid, and the outside parol agreement may not be shown or enforced, yet it may be shown by creditors for the purpose of proving the fraudulent intent which accompanied and characterized the giving of the written instrument.   It is usually difficult to prove by parol, an agreement in terms that the mortgagor may continue to deal in the property for his own benefit.   Parties concocting a fraudulent mortgage would not be apt to put the transaction in that unequivocal form.   But all the facts and circumstances surrounding the giving of the mortgage, and the subsequent dealing in the property with the knowledge and assent of the mortgagee, may be shown, and they may be sufficient to justify the court or jury in inferring the agreement; and so the parol agreement was inferred in all the cases which have come under our observation.

So, too, such a mortgage would be fraudulent and void as to creditors, if it was the arrangement between the mortgagor and mortgagee that the former might continue to deal in the mortgaged property for his own benefit so long as the latter consented thereto, thus leaving it in his power to assent that all the property should thus be sold and thereby deprive the mortgage of its character as a security.   The parties to a mortgage cannot thus play fast and loose with the mortgaged property and thus hinder and delay creditors.

It is also objected that the declaration made by the defendants' book-keeper at the time the mortgage was made, which was objected to on the part of the defendants, was not competent evidence.   We think it was competent as part of the *res*

*gestæ.* He went to the mortgagor's store, on behalf of the defendants, and procured the mortgage, and there made the declaration that it would not affect the mortgagor in any way to give it. Standing alone this declaration would not be sufficient to show the arrangement, both because it does not appear that he had any authority to make such a statement, and because, also, its meaning is not absolutely certain. But as part of the *res gestæ* characterizing the transaction and showing particularly what Sauerwine might have understood and was made to understand when he gave the mortgage, and also in the light of what subsequently occurred, we think there was no error in receiving it.

We are, therefore, of opinion that there was competent evidence sufficient to justify the finding complained of, and that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.