THE MANUFACTURERS AND TRADERS' BANK OF BUFFALO, Respondent, *v.* HARRIET M. KOCH. Administratrix, etc., *et al.*, Appellants.

*Court of Appeals, April* 19, 1887.

1. *Chattel mortgage. Fraud a question for the jury.*—The question whether the mortgagee gave the mortgagors permission to sell the mortgaged property, on the denial of the mortgagee, is properly submitted to the jury, under a charge that, if they found that there was an agreement or understanding that the mortgagors might sell the mortgaged property, and use the proceeds as they saw fit, it invalidated the mortgage.

   See note at end of case.

2. *Same.*—Even though a creditor does not know that the property of a firm is liable to be interfered with by individual creditors of a member, he has a right to demand that his firm claim be secured by a

chattel mortgage, so as to have a preference over such individual creditors; and securing such a preference is not a fraud.

3. *Charge. Abstract proposition.*—The court may properly refuse to charge an abstract proposition, though correct in substance, which is unnecessary and immaterial.

4. *Same. Notice of sales.*—The fact that the mortgagee had notice of sales by the mortgagors, and of the appropriation of the proceeds, is at the most, only evidence from which a previous agreement to permit such sales and appropriation might be inferred, and not a ground for a direction to the jury to find for the defendant.

5. *Evidence. Intent.*—Though a party may be examined as to his own intentions and motives when a question of fraudulent intent on his part is in issue, he cannot be permitted to testify as to the motives or intent of another party.

6. *Same. Re-direct examination.*—The court may, in its discretion, refuse to allow a witness, on re-direct examination, to be further examined as to matter called out on the direct, but not referred to in the cross-examination.

Action for the conversion of certain personal property, brought originally against defendant's intestate, who as sheriff had levied upon the property.

Appeal from the general term of the superior court of Buffalo.

*Matthew Hale*, for appellant.

*John S. Millburn*, for respondent.

RAPALLO, J.—This action was brought against Harry H. Koch in his lifetime as sheriff of Erie county. He having died after judgment, it was continued against the present defendant as his administratrix. The cause of action was the taking and conversion by the sheriff of certain personal property which was claimed by the plaintiff by virtue of a chattel mortgage made to it by Lauren C. Woodruff and Alfred B. Benedict, composing the firm of L. C. Woodruff & Co., of the city of Buffalo, to secure certain partnership liabilities of that firm. The mortgage covered the stock in

trade and other chattels of the firm, and was dated the 30th of October, 1884, and duly filed the same day.

The mortgagee took actual possession of the mortgaged property on the 26th of November, 1884, and continued in possession down to the 26th of December, 1884, when it was levied upon and taken from its possession by the sheriff, who justified the taking under two executions issued on the 19th of December, 1884, upon judgments re-covered the same day against said firm of L. C. Woodruff & Co., and alleged that the chattel mortgage under which the plaintiff claimed title was not made in good faith, and was in fraud of the creditors of L. C. Woodruff & Co., the mortgagors. On the trial the question of fraud was sub-mitted to the jury, and they found in favor of the plaintiff, who had judgment on the verdict. That judgment was affirmed by the general term, and the defendant now ap-peals to this court. As no opinion was rendered in the court below, we must state our reasons for affirming its judgment.

The first point urged on the part of the appellant is that the trial court erred in refusing to nonsuit the plaintiff. The ground upon which a nonsuit was claimed was, in sub-stance, that the uncontroverted evidence established that the mortgage was fraudulent as against creditors. The evidence on the part of the plaintiff showed that at the time the mortgage was given, October 30, 1884, there was a valid indebtedness on the part of the mortgagors, as co-partners, to the plaintiff, to an amount exceeding the value of the property mortgaged, and the president of the plaint-iff testified that the mortgage was given to secure then ex-isting indebtedness, and any that might afterwards arise. The indebtedness in question arose out of dealings of the firm of L. C. Woodruff & Co. with the plaintiff, which had continued for several years before the giving of the mort-gage; and it appeared in evidence that in the spring of 1884 the plaintiff had required security from the firm, and they

27

had given it a similar mortgage, but that after the giving of that mortgage, the firm had continued in possession of the mortgaged property, and had carried on its business, in the course of which it had sold a large part of the mortgaged stock, and had replaced it by new purchases, which were not covered by the mortgage, and that the mortgage of October 30, 1884, was given with the view of covering such after acquired property. During the running of the first mortgage, and before the giving of the second, the plaintiff had made an arrangement with Mr. Richardson, the book-keeper of L. C. Woodruff & Co., for an agreed compensation, to look after the interests of plaintiff as mortgagee, but no actual possession was taken by or on behalf of the mortgagee until about a month after the giving of the second mortgage, viz., November 26, 1884, when, the mortgage debt having become due, the plaintiff put a deputy sheriff in charge of the property. An arrangement was then made, allowing sales of the mortgage stock, the proceeds to be paid over to the plaintiff as mortgagee, and applied on the mortgage, and afterwards, and before the levy by the sheriff, the plaintiff, as mortgagee, gave public notice of the sale of the property under the mortgage.

It was claimed on the part of the defendant that the mortgage given in the spring of 1884 was not intended as a security to the plaintiff, but for the purpose of protecting the property against the claims of the creditors of the mortgagors, and enabling them to continue their business for their own benefit; that it was agreed that the mortgagors might make sales for their own benefit; and that the mortgage of October 30, 1884, was a mere renewal or continuation of the previous mortgage. All these points were controverted by testimony on the part of the plaintiff, and presented questions of fact for the jury. The only evidence of actual intent to defraud creditors was to the effect that Lauren C. Woodruff, one of the mortgagors, was indebted on some individual transactions of his own; that L.

C. Woodruff & Co. were apprehensive that these individual creditors of Woodruff might interfere with the property of the firm ; and that one object of giving the mortgage to the plaintiff was to protect the firm property against these individual creditors ; and there was some evidence to the effect that the plaintiff was aware of these facts. But, on the other hand, the evidence was that the mortgage was demanded by the plaintiff by direction of a committee of its directors, because it had ascertained that a portion of the mortgaged property had been sold, and it required a new security for the indebtedness to it. Even if it did not know that the property of the firm was liable to be interfered with by individual creditors of Woodruff, it had a right to demand that it should be secured, so as to have a preference over such individual creditors ; and securing such a preference was not a fraud. All these questions were properly submitted to the jury as questions of fact. The court charged the jury that it was for them to say whether the second mortgage was given for the purpose of securing the debt to the plaintiff, and nothing else ; that, if given with the view of defrauding the creditors of L. C. Woodruff & Co., it was fraudulent as matter of law.

The allegation that permission was given to the mortgagors to sell the mortgaged property was denied on the part of the plaintiff, and neither of the mortgagors testified to any arrangement or understanding allowing such sales. It does not distinctly appear what sales, if any, of mortgaged property were made after October 30, 1884, and before November 26th, or that the plaintiff had knowledge of them ; for there was property in the store of L. C. Woodruff & Co. not covered by the mortgage. The court left the question to the jury charging them that if they found that there was an agreement or understanding that the mortgagor might sell the mortgaged property, and use the proceeds as they saw fit, it invalidated the mortgage.

We think the court committed no error in refusing to

nonsuit the plaintiff, and that the question was properly submitted to the jury.

Some exceptions were taken to the charge, which are now insisted upon:

1. The court was requested to charge that " the possession of the bank by Richardson was not such a possession by the bank as to remove the case from under the statute." The court refused to charge otherwise than it had already charged. Aside from any criticism of the form of this request, we think the charge asked for, although perhaps correct in substance as an abstract proposition, was quite unnecessary and irrelevant. It does not appear to have been claimed by the plaintiff that, by means of the arrangement with Richardson, the mortgage was accompanied by an immediate, and followed by an actual and continued, change of possession of the mortgaged property so as to prevent the application of the statutory presumption of fraud arising from the want of such a change of possession, or to relieve the plaintiff of the *onus* of establishing affirmatively the *bona fides* of the mortgage. On the contrary, the cause was tried on the theory that the mortgage was not accompanied by an immediate change of possession. The plaintiff assumed the burden of proving its *bona fides,* and the court charged the jury that it was incumbent upon the plaintiff to show that its debt was a just debt, and that the mortgage was made in good faith, and without any intent to defraud. This charge gave to the defendant all the benefit which he could have derived from a charge in express terms that no such immediate and actual change of possession had been proved as was required by the statute to relieve the plaintiff from the presumption of fraud, or from the *onus* of affirmatively proving the good faith of the transaction. The arrangement with Richardson was one of the circumstances of the case which the jury were permitted to consider, not on the question of an actual change of possession, but on this question of good faith. The court had charged on that sub-

ject that it was for the jury to say whether the arrangement with Richardson, "if made, was made in good faith, and the intent was a change of possession and control or, on the other hand, was a blind, as it had been called by counsel." This charge was not excepted to. The court had in no part of the charge instructed the jury or even permitted them to find, that the arrangement with Richardson, whatever was its intent, was effectual to bring about the actual change of possession required by the statute, but left it to the jury to determine its intent only as a bearing upon the question of good faith; and when requested to charge, as an abstract proposition, that it was not such a possession by the bank as to remove the case from under the statute, it did not negative that proposition, but declined to charge further on the subject than had already been charged. In this refusal we find no error.

2. The court was requested to charge that if the jury found that the plaintiff had an agent in the store of the mortgagors during the time the chattel mortgage was in existence who knew the full facts of sales out of the mortgaged property, and that the mortgagors disposed of the proceeds of such sales for their own account, that the jury should find for the defendant. The court declined so to charge on the ground that the testimony did not warrant the statement of assumed facts. In this refusal we think the court was correct, as well for the reason assigned by it as for the further reason that the proposition applied to the first mortgage as well as to the second, and no distinction was made. Even if Richardson knew of sales during the running of the first mortgage, and could be presumed to have assented to them, that would not be a conclusive defense to the plaintiff's claim under the second mortgage, and thus authorize a charge that the jury must find for the defendant. No authority was shown to Richardson, in either case to consent to sales by the mortgagors, nor does it clearly appear that he was cognizant of them, or of the application

of the proceeds. But at all events, even if the bank, through Richardson, had notice of sales by the mortgagors, and of the appropriation of the proceeds, such notice, at the most, was only evidence from which a previous agreement to permit such sales and appropriation might be inferred. It was not ground for a direction to the jury to find for the defendant. Gardner *v.* McEwen, 19 N. Y. 126; Potts *v.* Hart, 99 N. Y. 168, 173.

3. The same answer applies to the further request to the court to charge that, if the jury found that Richardson was the agent of the plaintiff to look after the mortgaged stock, they must find that the plaintiff agreed to the sales made of the stock during the time.

These are all the exceptions to the charge which are insisted upon in the appellant's points in this court.

There are some exceptions to rulings upon questions of evidence, but we are of opinion that they present no point which requires a reversal of the judgment. Certain questions relating to the intent or motives of the mortgagors in executing the first and second mortgages were asked of the officers of the mortgagee, and excluded. A party may be examined as to his own intentions and motives when a question of fraudulent intent on his part is in issue, but he cannot be permitted to testify as to the motives or intent of another party.

Exception was also taken, and is now insisted upon, to the exclusion of testimony of Lauren C. Woodruff, offered on his re-direct examination, for the purpose of showing that the first mortgage was fraudulent. Woodruff had been called as a witness by the defendant, and had been examined for the purpose of showing fraud in the second mortgage. He detailed the circumstances and the conversations which led to its execution, and was examined as to his intentions in giving it, and as to his individual embarrassments. He was also examined, on his direct examination, with reference to the first mortgage, and stated that the second mort-

gage was given as a renewal of the first; that the president of the plaintiff claimed that a great part of the goods covered by the first mortgage had been sold, and new goods had come in, and it had ceased to be a security, and requested that a new inventory be taken, and a new mortgage executed and that witness assented to the request.   On his cross-examination on the part of the plaintiff, the witness was not asked anything about the first mortgage, but only as to the second, and his motives for giving it.   Being then re-called on the part of the defendant, Mr. Woodruff was asked whether the first mortgage was ever intended to be enforced. Objection being made to this question, the defendant's counsel offered to prove that the first mortgage was fraudulent.   The court refused to permit the proof to be made by the witness then on the stand, stating to counsel that that was part of his direct examination.   We think this ruling was a proper exercise of the discretion of the court, and further, that the question asked the witness was in itself improper, as he was not competent to testify to the intention of the plaintiff with respect to enforcing the mortgage. This, if material, must be shown by circumstances or the declarations of the party.

The judgment should be affirmed.

All concur.

---

NOTE ON EFFECT OF CONSENT BY THE MORTGAGEE TO THE MORT-
GAGOR TO SELL THE MORTGAGED GOODS.

The fact that the mortgagor continues in the possession of the goods, after the execution of the chattel mortgage, and sells a portion of them without the knowledge of the mortgagee, and in the absence of an agreement to that effect, does not alone render the mortgage void as to creditors.

Nor does a clause in the mortgage, which purports to extend its lien over after-acquired property, have this effect, in the absence of any arrangement permitting the mortgagor to deal with property, and of an intent to defraud creditors, where the mortgagee has no knowledge of such dealing on the part of the mortgagor.

An agreement contained in the mortgage or outside of it, either in writ-