ELLEN SPAULDING, Respondent, *v.* MARQUIS L. KEYES
Appellant.

*N. Y. Supreme Court, Fourth Department, General Term, May* 12, 1889.

1. *Chattel Mortgage. Bounty money.*—A gift by husband to wife of money
received as a bounty for enlisting as a volunteer in the United
States service, is valid, and the loan thereof furnishes a sufficient
consideration to uphold a chattel mortgage given by him to her,
as against his creditors.

See Note at the end of this case.

2. *Same. Fraudulent.*—An understanding and agreement that the pro-
ceeds of mortgaged property, as sold by the mortgagor, should be
paid to the mortgagee and applied in discharge of her mortgage,
is valid, and does not impair its validity.

3. *Same, finding.*—The determination of the jury that the mortgage
was made in good faith, and without any intent to hinder, delay
or defraud creditors, when the question was directly at issue on
the trial, and the evidence sufficent to sustain it, is final.

Appeal from a judgment and an order denying a motion
for a new trial.

*James A. Lynes*, for appellants.

*Palmer & Mattice*, for respondent.

MARTIN, J.—This was an action to recover damages for
the wrongful sale of certain personal property to which the
plaintiff claimed title under a chattel mortgage given her
by her husband, William Spaulding. The property in
question was sold by virtue of an execution issued upon a
judgment against the plaintiff's husband. The plaintiff's
mortgage was given and filed in the proper clerk's office be-
fore the entry of the judgment upon which such execution
was issued. The principal defenses interposed in this action
were, first, that the plaintiff's mortgage was without con-

sideration; second, that it was given with the intent to hinder, delay and defraud the creditors of the mortgagor.

The uncontradicted evidence was to the effect that the plaintiff loaned money to her husband at various times, which, with the interest, amounted to about the sum for which the plaintiff's mortgage was given, and that such mortgage was given to secure the payment of the money thus loaned and the interest thereon.

It also appeared that this money originally belonged to the plaintiff's husband, but he received it as a bounty for enlisting as a volunteer in the United States service, and gave it to his wife. The gift was valid, and the money could not be reached by his creditors. Whiting *v.* Barrett, 7 Lans. 106; Youmans *v.* Boomhower, 3 T. & Cook, 21.

The consideration for the plaintiff's mortgage was sufficient to uphold it.

The claim most earnestly pressed by the appellant is, that the mortgage was made with an intent to hinder, delay and defraud the creditors of William Spaulding, and was, consequently, void as against the judgment and execution under which such sale was made. This question was directly at issue on the trial, and the jury found that the mortgage was made in good faith, and without any intent to hinder, delay or defraud creditors. The evidence was sufficient to sustain this finding, and the determination of the jury should, we think, be regarded as final.

But it is claimed that the mortgage was void because the mortgagor was permitted by the mortgagee to sell the property mortgaged. If there had been an agreement or understanding between the parties that the mortgagor might sell the property and apply the proceeds to his own use, the transaction would doubtless have been fraudulent. Potts *v.* Hart, 99 N. Y. 168.

But in this case the understanding and agreement, as shown by the evidence, was that the proceeds of the property as sold should be paid to the plaintiff and applied in

discharge of her mortgage, which was done.    Such an agreement was legal, and did not impair the validity of the plaintiff's mortgage.    Brackett *v.* Harvey, 91 N. Y. 214.

Judgment affirmed, with costs

HARDIN, P. J., and MERWIN, J., concur.

### NOTE ON EXEMPTIONS UNDER SECTION 1393 OF THE CODE.

The general exemption laws of the state provide for the protection of certain articles or classes of property in favor of those who have others depending upon them for support, for the purpose of securing to them the use for consumption of the property exempted ; but section 1393 of the Code, while intended to accomplish the same object, provides for the exemption of money or its equivalent, which the United States has granted for military or naval services, whether or not the recipients are the heads of families.

The question naturally arises, how far does the protection of the statute extend ?   Is the exemption limited to the pension so long as it remains as government obligation or consist of cash in the hands of the exempt person ? or is it still protected after it has been converted into articles for the support or comfort of the pensioner and his family ?   It can be readily seen that unless the statute accomplishes the latter result, it affords no protection at all, as it exempts only while the pension, etc., is in such form that it cannot be used or consumed ; and as soon as it is converted into a shape to be enjoyed, the exemption ceases.   The courts seemed at first to lean towards this view and held that as soon as the exempted property had undergone any change, it was liable to the demands of creditors; but they have been growing more liberal in their construction, and are now endeavoring to accomplish.   The purpose for which the statute was enacted.

The pension, bounty, etc., are exempt in the hands of the recipient so long as they continue in their original form, or after the draft or certificate has been converted into money.   The party may donate it to a wife or other person, while it remains exempt in his hands, free from the lien or claim of the donor's creditors.   A gift of it, after it has ceased to be exempt in the recipient's hands, does not remove it from the reach of his creditors.   The privileges of the statute cannot be restored or regained after their have been once relinquished.

The test of the continuance of the exemption is the possibility of tracing and identifying the pension or bounty moneys in the purchase of property necessary or convenient for the support of the party and his family, or in the loan or investment made for the purpose of increase or safety, in such form as to secure their available use in time of need.   If these moneys are

employed in business, trade or speculation, or are so mingled with other funds as to be incapable of identification or separation, the benefit of the statutory exemption is lost. This rule is plain and simple though it may be difficult of application, and is laid down by the court of last resort.

Another peculiarity of this statute is that it goes beyond any other exemption law of the state, and protects against seizure for non-payment of taxes.

The Code on this point provides as follows :

Section 1393.     The pay and bounty of a non-commissioned officer, musician, or private, in the military or naval service of the United States; a land warrant, pension, or other reward, heretofore or hereafter granted by the United States, or by a state, for military or naval services; a sword, horse, medal, emblem, or device of any kind presented, as a testimonial, for services rendered in the military or naval service of the United States; and the uniform, arms, and equipments, which were used by a person in that service, are also exempt from levy and sale, by virtue of an execution, and from seizure for non payment of taxes, or in any other legal proceeding.

Chap. 578 of Laws of 1804 did not differ in any essential respect from the provisions of section 1393 of the Code. Yates County Nat. Bk. *v.* Carpenter, 49 Hun, 40; 14 N. Y. C. P. 372.

The object of section 1393 of the Code is to secure the pensioner in the use and enjoyment of the gift of the government and to prevent his creditors from taking it away, and as far as possible the courts should protect him in such use and enjoyment. Stockwell *v.* Nat. Bk. of Malone, 36 Hun, 583.

. This is a beneficent statute, and should be liberally construed by the courts, with a view of giving a full effect to the intention of the legislature. Burgett *v.* Faucher, 35 Hun, 647.

The favor of the statute is personal to the pensioner, and if he once relinquishes his privileges, it cannot be restored by any effort on his part. Id.

The United States Statutes on the same subject is limited to protecting and exempting pension money from levy and seizure while it remains in the pension office or in the hands of the government officials, and in the course of transmission to the pensioner. But after the money is paid over, the United States law ceases to be operative, and the right of exemption, if any exists, must be found in the laws of the State where the soldier resides. Id.

It is difficult to formulate a general principle by which to determine when the pay and bounty of a soldier has lost the protection of the statute; each case must be adjudicated upon its own state of facts. Id.

*Not exempt.*—The exemption of a soldier's pay and bounty from levy or sale under an execution does not extend to property purchased with or otherwise obtained in exchange for such pay and bounty.     Wygant *v.*

Smith, 2 Lansing, 185. It has never yet been held that where a debtor voluntarily sells or exchanges property which the law exempts from levy and sale by execution, and converts it into other property which the law does not exempt, the exemption attaches to the new property so purchased or taken in exchange. Id.

A certificate of deposit purchased with pension money is not exempt from the payment of the pensioner's debts. Matter of Kennedy, Surr. Ct., Cayuga County, November 21, 1888. In this case, the testator purchased a certificate of deposit payable to his own order bearing interest, with money which he had received as a pension from the United States, and twice drew the interest upon the amount deposited, and each time took a new certificate for the principal sum. Upon his death, it was held in Surrogate's Court that the proceeds of the certificate of deposit which came to the hands of his executors were applicable to the payment of the testator's debts, and were not exempt from levy and sale by virtue of an execution, under section 1393 of the Code.

In Medrick *v.* De Vinney, 18 W. Dig. 355, a motion was made in supplementary proceedings to require the judgment debtor to pay into the sheriff's hands a sufficient sum of money to satisfy the judgment in this action. The money sought to be reached was awarded to him as a pensioner for his services in the rebellion, and was sent by means of a pension certificate which he had cashed at bank, and it was a part of this identical money which the judgment creditor sought to obtain by these proceedings. It was held that the money was exempt from execution and seizure in any legal proceeding.

In Matter of Winans, 5 Demarest, 138, at the time of intestate's death, there was on deposit to her credit in bank a sum of money given to her by the United States, on account of the services of her son, and which constituted the whole of her estate. After her death, a judgment was recovered against her administrator on a claim due from her, and the judgment creditor, on the accounting, claimed payment from this money; and it was held that such pension moneys were not exempt, in favor of her descendants who do not form a family for whom she provided, from liability to be applied in payment of a judgment recovered, upon her debt, against her administrator.

*Exempt.*—It was held in Whiting *v.* Barrett, 7 Lansing, 106, that a soldier's bounty money was exempted from execution and proceedings supplementary thereto while in his hands, and that he could transfer it by gift or sale to another person, relieved from the claims of his creditors. In this case, he gave the bounty money, then in the shape of government bonds to his wife who converted them into money and invested the proceeds in real estate in her own name, and it was decided that she took absolute title to the bonds; that his creditors could not be heard to allege

that the transfer was in fraud of them, and that her deed could not be set aside at their instance.

As long as the bounty remains unchanged in form in the soldier's hands, it is exempt from the claims of his creditors. Youmans v. Boomhower, 3 N. Y. S. C. 21. So if he makes a gift of it to his wife, or any person, it becomes the property of the donee, with no legal or equitable claim upon it, by or in behalf of his creditors. Id.; Whiting v. Barrett, 7 Lansing, 106. A gift of exempt property by a debtor cannot operate as a fraud on his creditors, as they have no right to insist that this kind of property shall answer his debts. Youmans v. Boomhower, ante. In this case, the judgment debtor received his bounty, passed it over to his wife, and she invested it partly in the premises sought to be charged in the action with his debts, taking the conveyance in her own name. Subsequently they had a settlement in regard to the matter of the investment of the bounty, and his wife gave him her note for a certain sum, with the understanding that he should make no further claim to the land. He transferred the note to a third party, who, on being sued thereon, settled the case. It was held that, in case there was a valid gift to the wife, his creditors could not secure a lien upon, or set aside the conveyance of the real estate; that in case the money was invested, and the conveyance taken in his wife's name, a bona fide settlement for the husband's equity in the lands before any proceedings were commenced to reach such equity, discharged the land therefrom; that the wife's note in the debtor's hands was not exempt, but having been transferred for a consideration, and paid for or satisfied in good faith and without collusion, it was not liable in the hands of the holder, to any claim of the payee's creditors; and that the fact that the debtor, at the time he received the bounty, was a deserter from the Army, and enlisted under a fictitious name, would not affect the exemption of such bounty.

In Burgett v. Faucher, ante, the defendant received from the proper department at Washington for a pension due him, a draft on the assistant treasurer at New York for the amount, indorsed and delivered it to a firm of bankers, who paid him a portion of the amount in cash, and a deposit slip, crediting him the balance subject to the defendant's check, with no agreement for the payment of interest; and it was held that it was exempt from levy or seizure in any legal proceedings, under the provisions of section 1393 of the Code.

In Stockwell v. Nat. Bk. of Malone, ante, a receiver in proceedings supplementary to execution brought an action to recover from the defendant bank the amount of a deposit held by it for the judgment debtor, consisting of pension money received and deposited with the bank, partly in cash and partly in a check or draft of the pension agent, under an agreement that interest should be allowed thereon, and it was held that the fund was exempt from seizure in any legal proceedings, under section 1393 of the Code. In all fair and reasonable meaning, this money in the bank is the pension, just as much as the draft was, and just as much as the avails of

the draft would have been, if the judgment debtor had received the avails in money. Id.

That real estate purchased by a debtor with moneys derived from a pension granted to him by the United States for military services, is not exempt, under section 1393 of the Code, from levy and sale on execution, was held in Yates County Nat. Bk. *v.* Carpenter, *ante,* on the ground that the exemption provided by the statute mentioned does not extend to property purchased with the exempt money. Id. In this case, a levy under execution had been made upon purchased by the judgment debtor with pension money, and it was held that the money, while in the possession of the pensioner, was exempt, but that, when he voluntarily exchanged the meney for other property which was not exempt, the exemption did not attach to the exchanged property.

On appeal from the judgment of the general term in this case to the court of appeals, 119 N. Y. 550, the latter court held that, though in such case it is somewhat difficult to lay down a rule in precise terms by which it may be determined in all cases what property is liable and what exempt from levy and seizure upon legal process for the payment of debts, yet, where the receipts from a pension can be directly traced to the purchase of property, necessary or convenient for the support and maintenance of the pensioner and his family, such property is exempt under the provisions of section 1393 of the Code. The court says : where such moneys can be clearly identified, and are used in the purchase of necessary articles, or are loaned or invested for purposes of increase or safety, in such form as to secure their available use for the benefit of the pensioner in time of need, we have no doubt but that they come within the meaning of the statute ; but where they have been embarked in trade, commerce or speculation, and become mingled with other funds, so as to be incapable of identification, or separation, we do not doubt that the pensioner loses the benefit of the statutory exemption." The judgment of the general term was reversed.

The case of Wygant *v.* Smith, *ante,* was limited to the facts appearing in the case, that the pensioner had embarked his pension in business or trade, and in some transactions had made a profit, and it was impossible to identify the fund in the various articles of property in which, through numerous and successive changes, it had became invested, and it was therefore properly held that the pensioner had lost his exemption.

Under the rule laid down by the court of appeals, the decisions in Burgett *v.* Faucher, *ante,* and Stockwell *v.* Bank of Malone, *ante,* were correctly made; that moneys received from a pension and deposited in a bank in the name of the pensioner were not subject to proceedings on the part of creditors to have them applied in payment of debts, though the relation between depositor and bank is that of debtor and creditor.