## SISTARE v. HECKSCHER.

*(Supreme Court, Special Term, New York County.  September, 1891.)*

CANCELLATION OF DEED—PROCUREMENT BY FRAUD.

A married woman conveyed her land to her husband's creditor on the false representation of the husband that, if such conveyance were made, the creditor would advance the money necessary to save the husband from financial ruin; that the giving of the deed was a mere form, and it would not be recorded, and that the property would be reconveyed to her in a short time. *Held*, that the deed would be set aside at the suit of the wife against the creditor as procured by fraud, and it was immaterial that the husband was not authorized by the creditor to make such representations, and that the creditor did not participate in the fraud.

Action by Margaret Sistare against Austin Heckscher to have a deed theretofore executed by her declared null and void, and for a reconveyance to her.
*Israel F. Fischer*, for plaintiff.  *Alexander & Green*, for defendant.

O'BRIEN, J.  This is a suit in equity, brought by plaintiff, a married woman, to have a deed conveying to defendant a house and lot on East Sixtieth street, which had been used by her and her family as their residence or dwelling, declared null and void, and reconveyed to her, upon the ground that she was induced to make the conveyance by misrepresentation, duress, and fraud.  Some stress is laid upon the circumstance that this property was originally given to plaintiff by her husband, and it is suggested that no injustice will result if it should be appropriated to the payment of his debts. This is, however, entirely without force when we consider for a moment the *status* of plaintiff to the property when the conveyance was made to defendant in March, 1890.  A husband has the right to make provision for his wife and children; and when in solvent circumstances, and without any intent to defraud his creditors, he purchases for or gives her a dwelling-house, this act, valid and legal at the time, cannot be invalidated, or the title of the wife destroyed, by the circumstance that years afterwards the husband becomes insolvent.  At the outset, then, the evidence shows that plaintiff became the owner of the premises in question by a good and sufficient deed, May 19, 1883, and which was duly recorded on that day; that she assumed the payment of the mortgages on the property, insured the same in her own name, and continued thereafter to pay the taxes, interest, and premiums of insurance upon the property.  There is no suggestion that in 1883 her husband was in any other than a prosperous condition; nor is it claimed that any fraud was perpetrated upon these creditors whose claims, in the absence of proof and the time intervening, cannot be assumed to have then been in existence.  The plaintiff, therefore, acquired a good and valid title to the premises, and neither the defendant nor the husband himself, if disposed to, is in a position to attack her title, whether she originally paid or did not pay anything for it.  It became her sole property, and she was at liberty to deal with it as she thought proper, and could only be divested of the same by her voluntary act and deed. She had the right, and it would be highly commendable, to devote it to the payment of her husband's debts.  The debt of the husband would be a sufficient consideration to support not only a promissory note or a transfer of personal property, but also a deed given by a wife in the absence of misrepresentation, duress, or fraud.  In other words, a wife who voluntarily charges herself to pay, or transfers her property, real or personal, to pay, her husband's debts, cannot, on changing her mind after. the act is consummated, free herself from liability or obtain a reconveyance on the ground of inadequacy of consideration, for the indebtedness of the husband is a sufficient consideration.  The principle formulated by Chancellor KENT in *Demarest* v. *Wynkoop*, 3 Johns. Ch. 129, is still good law, wherein he said: "There is no doubt that a wife may sell or mortgage her separate property for her husband's debts." *Lord* v. *Lindsay*, 18 Hun, 484; *Bank* v. *Leavitt*, 10 N. Y.

Supp. 194; *Insurance Co.* v. *Babcock*, 42 N. Y. 613. A married woman stands in no different position than a *feme sole* or person of the opposite sex, so far as the question under consideration is concerned. The doctrine that A.'s guaranty or suretyship for B. finds ample consideration to support it in B.'s precedent debt to C., is established in this state. *Schepp* v. *Carpenter*, 51 N. Y. 602; *Savings Inst.* v. *Duryea*, 67 N. Y. 84; *Bank* v. *Penfield*, 69 N. Y. 502. In all these cases referred to, however, where the act of the wife in becoming surety or in giving a mortgage on or deed of her property for her husband's debts was passed upon, the act was held to be valid because it was freely and deliberately done.

Where, however, a wife or a third person to pay a husband's or another's debt, is thus induced by untrue statements, or acting under a misapprehension, to make the transfer, when but for such misapprehension she would not then have made it, her legal right to a retransfer is clear. The question to be determined, then, is, was the act a free act, or one induced by duress, fraud, imposition, or undue influence? As this must necessarily be determined by the evidence, a short summary of the undisputed facts is necessary. About March 15, 1890, seven years after taking title, the husband, being indebted to two persons for whom defendant was acting as agent or trustee, agreed to have executed by his wife in addition to the transfer of other securities a deed of the property owned by her as collateral security for the debt. On reaching home one evening, the husband, who was laboring under excitement, called the wife from the parlor, where she was entertaining a visitor, to a room upstairs, and there told her for the first time that his firm was on the verge of financial ruin; that there was only one thing to be done to save them,—that the two creditors were to advance money to tide them over their embarassment on condition that she would sign the deed of the house to them. He further told her it was nothing but a form; that nothing would be done; that the deed would not be recorded; that she was to remain in undisturbed possession, and at the end of a few weeks, or at most months, it would be reconveyed to her. A few moments after these statements a notary arrived with the deed, which plaintiff signed, and the husband, after signing, handed it to the notary, who took and delivered it to the attorneys for defendant. As a matter of fact the creditors to whom the securities, including the deed, were given made no advances, and a short time after the firm failed, and the deed to defendant was recorded.

It is insisted by the defendant that the Heckschers, for whom he was acting, never promised to advance any more moneys, and that any representations made to the wife by the husband of any kind are not binding upon them, because unauthorized. As said in *Bedell* v. *Bedell*, 37 Hun, 420: "It is not a question of agency, but a question of fraud. If the instrument in question was obtained from the plaintiff by misrepresentation and fraud, it cannot be held against her. It is quite immaterial who perpetrated the fraud. The defendant cannot enjoy its results and retain its benefits by a claim that it was unauthorized by him. He has accepted an instrument tainted with fraud, for which he has paid no consideration. He cannot retain the instrument for use against the plaintiff on the ground that the fraud was unauthorized by him, and committed without his knowledge or procurement." Whether the Heckschers agreed or did not agree to advance moneys to her husband's firm is immaterial. The question is, was she induced to sign the deed by misrepresentations or under a misapprehension? This is to be determined not by what occurred between the Heckschers and plaintiff's husband, but by what occurred on the evening between husband and wife, when the former induced her to sign the deed. What was then said and done, being part of the *res gestæ*, is admissible, though the defendant and his principals were absent. See *Potts* v. *Hart*, 99 N. Y. 168, 1 N. E. Rep. 605; *Bedell* v. *Bedell*, 37 Hun, 420. Either the husband knew that the Heckschers would not advance any

more moneys, and that the firm would fail, and the property of the wife be absorbed to pay his debts, and, nevertheless, represented to his wife what was false, or under the belief that they were true, while actually false in fact, he made the statements which, operating on the mind of his wife, induced her to :sign the deed.    In either case the instrument cannot stand, for it was not ex-·ecuted freely, with a knowledge of the true state of affairs, but under misrepresentation and misapprehension.    In *Boyd* v. *De la Montagnie*, 73 N. Y. 498, it is said: "A gratuitous transfer of property from a wife to a husband, induced in part by false representations on his part, cannot stand.    To sustain .an action for that purpose· it is not necessary to show a fraudulent intent upon the part of the husband in making the representations."    The same ·case is authority for the statement that from the confidential relations of the parties the burden is thrown upon the party in whose favor the transfer was made to show that the transfer was freely and deliberately made, and that the transaction was fair and proper.    In *Adams* v. *Bank*, 116 N. Y. 606, 23 N. E. Rep. 7, it is said: "The principle which appears to un-·derlie all of this class of cases is that whenever a party is so situated as to exercise a controlling influence over the will, conduct, and interest of another, contracts thus made will be set aside."    See, also, *Barry* v. *Assurance Soc.*, 59 N. Y. 587.    In the case of *Aldridge* v. *Aldridge*, 120 N. Y. 614, 24 N. E. Rep. 1022, a transfer by a wife, while subjected by her husband to continued persuasions, and while she was sick, and without time for ɪeflection or opportunities to take counsel or advice, was held not to be the result of free action.    The present is not as strong in its features as the ·one last referred to.    But, as before stated, the test to apply is, was the transfer the voluntary act of a free agent, or was it the result of undue influence, ·duress, misrepresentation, or fraud?    I am of the opinion upon the facts that the circumstances under which Mrs. Sistare was induced to sign the deed preclude the idea of its having been a voluntary or intelligent act on her part. Without previous knowledge of her husband's embarrassment, suddenly called from her parlor and confronted by him while laboring under excitement, she was asked to sign as a necessity for his self-preservation.    To induce her to .sign he stated what proved to be false, but which she believed to be true.    He stated that her executing the deed, which was not to be enforced, could alone save him from impending ruin.    This from a husband in whom she was accustomed to confide, and to whom she was bound to be loyal, must necessarily have had a controlling influence over her acts.    In *Jones* v. *Jones*, 6 N. Y. St. Rep. 739, the rule is thus stated: "The broad and beneficent principle is that, except in the case of an innocent purchaser for value, no person can enjoy the results of a fraud and retain its benefits under a claim that it was unauthorized by him."    The nature of the representations being to some extent future and promissory, and the fact that she was willing to sign the deed so that in some way she might aid her husband to appease his creditors, made me at first hesitate in awarding judgment.    But upon the whole I think judgment should be for plaintiff, for the reasons that the signing and delivery of the deed was not the free, intelligent, and voluntary act of plaintiff, and the defendant did not occupy the position of an innocent purchaser for value.

There should be judgment, accordingly, for plaintiff, without costs.