Lee McHenry, as Trustee in Bankruptcy of Fred Heiderich, Plaintiff, *v.* Herman Heiderich and Another, Defendants.

Supreme Court, Madison County, July 15, 1929.

*McGown & Stoltz,* for the plaintiff.

*Walter W. Wilcox,* for the defendant.

SENN, J. On July 1, 1922, the defendants Herman Heiderich and Fred Heiderich, father and son, were copartners in the retail shoe business at Oneida, N. Y., and had been for about five years. On that date the partnership was dissolved, the father withdrawing and the business being continued by the son. Up to that time the father had furnished the money that went into the business and the son had conducted the store. On the dissolution the son purchased his father's interest for the sum of $6,400, for which he gave his promissory note and agreed to secure it by a chattel mortgage of the same amount upon the stock of goods and fixtures then in the store and inventoried at $7,100. The chattel mortgage contained the list of goods as made on July first, but was not signed or delivered until October 30, 1922, about four months later. It was duly filed in the Oneida city clerk's office.

It is claimed by the defendants that on or about July 1, 1922, the date when the list for the chattel mortgage was made, the listed chattels were segregated and set off by themselves and not intermingled in any manner with the goods acquired after that, but it is practically admitted that the defendant Fred Heiderich continued to purchase goods, adding them to his stock, and continued to sell both the new goods and the mortgaged goods indiscriminately, applying the proceeds in the ordinary course of his business, for the purchase of further goods or for whatever purposes he deemed advisable; and that this was to a greater or less extent with the knowledge and consent of his father.

Up to the month of April, 1923, nothing had been paid of the principal of the $6,400 debt and the defendant Fred Heiderich, having evidently decided to discontinue the business, commenced, and for a few weeks conducted, a closing out sale, employing for that purpose a party who made a business of conducting such sales. At this sale goods covered by the chattel mortgage as well as other goods in stock were sold, the proceeds amounting to $6,004.18. Of this amount, the sum of $4,570.83 was paid over to the defendant Herman Heiderich to apply on the chattel mortgage. After that the chattel mortgage was foreclosed and the remaining mortgaged stock bid in by the defendant mortgagee for $110, so that a total of $4,680.83 was paid upon the $6,400 indebtedness to Herman Heiderich.

On July 19, 1923, on the petition of creditors, Fred Heiderich was duly adjudged a bankrupt, and on the sale of his assets $275 was realized. The unsecured debts amounted to $4,920.83.

The chattel mortgage is claimed to be a nullity on two grounds: *First*, that it permitted the mortgagor to carry the mortgaged goods as a part of his stock in trade, mingling them with his own and after-acquired goods and applying the proceeds to his own uses. *Second*, that the requirements of section 230-a of the Lien Law (added by Laws of 1921, chap. 462, as amd. by Laws of 1922, chap. 137) were not complied with when the chattel mortgage was given.

The chattel mortgage contained this clause: " To secure the payment of a note in the sum of Sixty-four hundred Dollars and ... cents ($6,400), payable $125 principal and interest at 6% every three months. Second party gives to the first party the right to sell any and all of the above mortgaged property upon condition that first party shall retain from the proceeds thereof, sufficient to meet the payments of principal and interest on said note every three months."

This clause, especially when coupled with the fact that from the inception of the mortgage, the mortgagee was permitted a free hand in selling the mortgaged goods practically as his own, passing at least two payments of $125 each due thereon, although the mortgaged goods sold must have amounted to much more, is sufficient to bring the instrument within the condemnation of a long line of well-settled cases which hold chattel mortgages on goods in trade containing such reservations or so treated by the parties, to be fraudulent and void as against creditors. It would be a waste of time and space to attempt to cite them all. The ground is pretty well covered in *Potts* v. *Hart* (99 N. Y. 168) and *Benedict* v. *Ratner* (268 U. S. 353).

The reason for the rule is so obvious that its discussion is to a certain extent superfluous. In a retail store it must naturally follow that after a short time of buying and selling it would be difficult if not impossible for the creditor to know what part of the stock was mortgaged and what was actually owned by the dealer. The defendant claims that the instant case is taken out of the rule and distinguishable from the cases cited by the segregation of the mortgaged goods. But, unfortunately for this contention, no means were provided by which the creditors could know the facts as to the segregation. If the mortgage had provided that the segregated goods be sold by the mortgagor as agent of the mortgagee and used for no other purpose until the mortgage was paid and that provision had in fact in good faith been carried out, then a very different question would have been presented and there could have been no adverse criticism on that score. The argument that the son was to retain the proceeds of the goods sold, over and above the payments falling due, as trustee for the mortgagee, is

untenable to say the least, especially in view of the son's financial circumstances. The segregation of the mortgaged goods may have been valuable for the purposes of the mortgagor and mortgagee, but was of no value whatever to guide the judgment of present or prospective creditors.

On the grounds stated, if there were no other, the chattel mortgage would have to be held a nullity as to the receiver plaintiff.

But it is void on account of a failure to comply with the provision of section 230-a of the Lien Law, which provides:

" Every mortgage  *  *  *  upon a stock of merchandise in bulk, or any part thereof, or upon merchandise and fixtures pertaining to the conduct of the business of the mortgagor, shall be void as against the creditors of the mortgagor, unless the mortgagor shall, at least five days before the execution of such mortgage, make a full and detailed inventory, showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the mortgagor of each article to be included in the mortgage; and unless the mortgagee demand and receive from the mortgagor a written list of names and addresses of the creditors of the mortgagor specifying the amount due or owing to each and certified by the mortgagor under oath to be a full, accurate and complete list of his creditors and of his indebtedness; and unless the mortgagee shall at least five days before the execution of such mortgage notify personally or by registered mail every creditor whose name and address is stated in such list, or of which he has knowledge, of the proposed mortgage and the terms and conditions thereof."

In fact no list of creditors as provided in this section was furnished and no notice was given them. But it is argued for the defendants that this was unnecessary; that the provision is for the benefit of creditors only and that on July 1, 1922, when the chattel mortgage was agreed to be given, there were only three small. creditors who were soon thereafter paid and so could have no interest in receiving any notice of the proposed chattel mortgage. That proposition might be tenable if the mortgage had been as of July first. But it was given on October thirtieth.

It is true that while the section provides for at least five days' notice to be given it does not prescribe any maximum of time. It might be contended that any time not unreasonably long would answer the purposes intended. Whether a notice given four months ahead of the proposed mortgage would be reasonable might be a question if there were no creditors whose claims accrued after the notice. But the fact is that between July 1 and October 30, 1922, the defendant mortgagor had acquired a number of creditors

to whom he owed considerable sums, and it was the very evident intent of the Lien Law that all creditors existing at the time of the execution of the proposed mortgage should have the notice. Any other construction of the section would nullify the purposes it was intended to serve, viz., that having due notice they (the creditors) might be governed accordingly and take such steps for the protection of their interests as they might be advised.

But the fact is that from the inception of the mortgage to its execution and delivery, neither the letter nor the spirit of the law was observed. I, therefore, hold the chattel mortgage in question to be null and void, especially as to the creditors of the bankrupt. That being so, it is unnecessary to go further into the details or merits of the transactions involved.

William Smith, an accountant, was sworn for the plaintiff. He examined the books and papers of the bankrupt in the possession of the trustee and made certain analyses and drew certain deductions therefrom. On cross-examination it appeared that some of his computations were based on the replies to a questionnaire sent by him to the creditors. All such deductions I have disregarded as hearsay. Indeed, all the facts assumed in this opinion sufficiently appear, independent of any testimony given by Mr. Smith, much of which was incompetent.

Findings and judgment in accordance with the holdings indicated may be submitted.