JAMES THOMPSON *et al.*, Appellants, *v.* CLARENCE N. FULLER *et al.*, Respondents.

*Supreme Court, Third Department, General Term, December 11, 1889.*

1. *Election of rights and remedies.*—An action in replevin for part of the goods fraudulently purchased, is an election to rescind the sale, and an attachment cannot be granted in an action to recover the purchase price of the balance.

2. *Same.*—The contract must be rescinded *in toto.*

3. *Same—*An election of remedies, once made, is irrevocable.

4. *Chattel mortgage. Delivery.*—No reason or excuse for not delivering the goods to the mortgagee, after the execution of a chattel mortgage, is necessary.

5. *Same. Validity.*—To avoid a chattel mortgage on account of an oral agreement outside of it, such agreement must be proved.

6. *Sale. Validity.*—A sale of goods to a *bona fide* creditor, to pay his claim, is lawful, if followed by an immediate delivery.

Three appeals. The first from an order of Judge Fursman vacating an attachment granted by him.

The second, from an order of Justice Ingalls, refusing to vacate another attachment granted by him after the former attachment had been vacated.

The third, from an order from Justice Edwards vacating, on affidavits of the defendant, the said attachment granted by Justice Ingalls.

*James Lansing*, for plaintiffs.

*Frank S. Black*, for defendants.

LEARNED, P. J.—The action is to recover for goods sold by plaintiffs to defendants Fuller & Company.

The ground of the attachment is that defendants Fuller & Company had assigned property with intent to defraud creditors.

The Code, § 635, authorizes an attachment in three cases: 1. Breach of contract. 2. Conversion of personal property. 3. Injury to personal property. This case must come under the first. In an action for fraud the remedy is arrest. Section 549. Whether, therefore, the goods were purchased by fraud is not material. Goldschmidt *v.* Herschorn, 13 N. Y. State Rep. 560; Strauss *v.* Seamon, Id. 740. The only question is as to an assignment with intent to defraud creditors.

In both applications the plaintiffs state that there are no counterclaims, thus showing that their action is on the contract. Code, § 636, sub. 1. It is only to an action on the contract that there would be a counterclaim.

The affidavit of the plaintiffs avers that they sold goods to the defendants; that they were induced so to do by fraudulent representations; that after said sales of goods the plaintiffs brought a replevin suit to recover such of the goods as remained in defendant's possession, and that they did recover, and still hold, about $900 in value of such goods.

When goods are sold on fraudulent statements by the vendee, the vendor has either of two remedies. He may affirm the sale and sue for the price. Or he may disaffirm the sale and reclaim the goods. But he cannot do both. "The remedies are not concurrent, and the choice between them once being made the right to follow the other is forever gone." Morris *v.* Rexford, 18 N. Y. 552.

This doctrine was again asserted in Kinney *v.* Kiernan, 49 N. Y. 164. There it was said that after such rescission of the contract of the vendor on the ground of fraud on the part of the vendee the contract is at an end, and no act of the vendor can revive it. Consequently, after such a rescis-

sion, an action by the vendor against the vendee is not maintainable.

The contract must be rescinded *in toto.* Wheaton *v.* Baker, 14 Barb: 594 ; Stevens *v.* Hyde, 32 Id. 171; Matteawan Co. *v.* Bently, 13 Id. 641. In the case of Kinney *v.* Kiernan, the plaintiff had replevied a part of the goods sold, and the court said the action on the contract of sale was gone. The rights of the parties were the same as if there had never been any sale and the goods had been tortiously taken.

The doctrine is again laid down in Moller *v.* Tuska, 87 N. Y. 166, where the plaintiffs brought an action to replevy on the ground of fraud goods sold by them. Afterwards they proved their claim in bankruptcy and received a dividend, but the money paid was subsequently refunded to the assignee.

The court held that as plaintiffs had once elected to disaffirm the sale they could never afterwards successfully assert a claim against the purchaser on the contract. And that the subsequent transaction with the assignee in bankruptcy had no bearing on the question because plaintiffs then were bound by their previous election. See Rodermund *v.* Clark, 46 N. Y. 354.

If a man once determines his election it shall be determined for ever. Com. Dig. Election C., 1 and 2.

The affidavit alleged sales on the 14th of December, between the 9th and 17th of January, and on the 28th of January, and it alleges a replevin February 4 of so many of said goods as remained in defendant's possession. This language applies to all the sales, and not specifically to any one. For the allegation is that all of said sales were made on fraudulent representations of defendants. The plaintiff therefore elected, as appears by their own affidavit, to rescind all of the sales ; to treat the goods sold as being still their own property just as if there had been no sale but only a tortious taking. For if they retook the goods or any part of them then they asserted that the goods were still their own and disaffirmed the sales altogether. They have

therefore no right of action on the alleged contracts of sale. Such contracts do not exist.

The plaintiffs, in their action of replevin, could have recovered, and perhaps did recover, damages for the taking of those goods of which they did not recover possession. Code, § 1730. If the defendants took the goods tortiously, such taking was, as to each alleged sale, a single act. And it may be doubted whether the defendants can be subjected to two actions in regard to the same act when a full remedy can be given in one. O'Brien *v.* Mayor, 28 Hun, 250 ; Secor *v.* Sturgis, 16 N. Y. 554.

It does not aid the plaintiffs to aver that this action is based on the fraud. They state in the affidavit a sale of the goods, and the fraudulent statements which induced the sale. Now, these were the very circumstances of the cases above cited. Morris *v.* Rexford, Kinney *v.* Kiernan, Moller *v.* Tuska, and in those cases the principle was applied which has been stated above.

The case of Powers *v.* Benedict, 88 N. Y. 605, is not in conflict. That was an action of replevin against a third party in which plaintiff had taken part of the goods sold. It was held that it was not a defense that plaintiff had proved against the original party a claim in bankruptcy for the residue of the goods. In the present case the replevin was against the original party.

Passing this point, however, we prefer to inquire as to the proof of alleged fraudulent intent. And we consider first the appeal from the order of Mr. Justice Edwards, because both parties were heard before him on their several affidavits. And hence the facts may be thought to appear.

The plaintiff's allegations are the obtaining of the goods by fraudulent representations of solvency, the executing a mortgage to Morrison, the selling goods at less than the market price, the removing and the concealing of part of the goods. Some of the allegations are based on a conversation alleged to have been had by one of plaintiffs with Morrison.

Morrison, in his affidavit, denies the alleged conversation altogether. He further states that he guaranteed to plaintiffs the third bill sold to defendants which contains the goods afterwards replevied.

He denies any intent to defraud, and states that the mortgage was given to secure money actually loaned to the firm by him.

The affidavit of Fuller, the purchasing member of the firm, denies making the alleged fraudulent statements and positively contradicts all plaintiffs' allegations in that respect. He avers that the money was owing Morrison for which the mortgage was given, and that it was not given with intent to defraud. He denies the statements that goods were sold at less than market price. He says that the goods were sold to pay defendant's debts.

The defendant's affidavit is simply the affidavit of the person to whom they are alleged to have sold, and by other affidavits.

The plaintiff used opposing affidavits. In regard to selling below market price the affidavits are statements of hearsay. Some affidavits are given of the poor quality of collars made by defendants.

Now the argument of plaintiffs is that as the defendants remained in possession after execution of the mortgage, it was presumptively fraudulent. Under 2 R. S., m. p. 136, § 5, this is a mere legal presumption, overcome by proof of good faith and absence of intent to defraud. And the question of fraudulent intent is one of fact, not of law. 2 R. S. 137, § 4. No reason or excuse for not delivering is necessary. The only question is that of good faith. Whether an attachment could properly be issued based merely on this presumption we heed not say. Grosvenor *v.* Sickle, 13 N. Y. State Rep. 566, where it is said that if an act is capable of an innocent construction as well as a fraudulent one, courts were bound, in such applications, to assume the former. " The Code requires an actual personal intent to de-

fraud." Milliken *v.* Dart, 26 Hun, 26 ; Morris *v.* Talcott, 96 N. Y. 100, 107 ; Nichols *v.* Michael, 23 Id. 266 ; Von Moppes *v.* Leimbach, 23 Week. Dig. 337.

But the plaintiff urges that, according to Southard *v.* Benner, 72 N. Y. 424, it is fraudulent for the mortgagor to remain in possession and dispose of the mortgaged property for his own benefit, under agreement with the mortgagee. The difficulty is that it is not shown in this case that there was any such agreement, or that the avails of sales were applied to defendant's use. The mortgage was executed January 30th. The affidavit for the first attachment was made Febuary 19th, and for the second, March 2d. The sales to Bailey & Company were before the execution of the mortgage. The goods received by the Andrew M. Church Company were received by the mortgagee himself and by him sold to that company. The plaintiff replevied goods February 5, and attached February 26.

Now, it is undoubtedly true that such an agreement between mortgagor and mortgagee may be proved by circumstances, Potts *v.* Hart, 99 N. Y. 168, and the decision of a trial court on such an agreement will not be reversed if circumstances justify it. But in that case it was affirmatively proved that the mortgagor had sold two-thirds of the property with the knowledge of the mortgagee, and had never paid him anything. But in this case there is no such proof. On this point, too, we have the decision of the learned justice whose order is appealed from, and he finds that every essential fact on which the attachment was granted has been successfully controverted. He must, therefore, have found that the mortgage was not fraudulent in fact. To avoid a chattel mortgage on account of an oral agreement outside of it that the mortgagor may sell the mortgaged property and use the proceeds, the agreement must be proved. Brackett *v.* Harvey, 91 N. Y. 214.

It appears that after the first attachment had been vacated, and before the second had been issued, Morrison desired to

get payment of his debt. The defendants therefore sold and delivered to him enough personal property to pay his debt, and he removed at once the goods so sold. It has been shown that he was a *bona fide* creditor. As such it was lawful for him to obtain payment of his debt ; just as lawful as it was for the plaintiffs. The delivery and sale to him of the goods could not be unlawful. The plaintiffs had endeavored to obtain a preference by their first attachment. They lost this when the attachment was set aside. Before the second attachment was obtained the defendants paid Morrison by the sale and delivery to him of personal property. The plaintiffs claim that the transaction was hasty, and that defendants did not explain what they were doing. But one may be hasty in paying an honest debt, and he is not bound to tell his employees that he owes a large debt. The great question is was the debt an honest one, and was there one transaction intended to pay it.

Among the plaintiffs' papers is a paper prepared to be sworn to by one Ametrano to which he refused to swear. We do not think that any weight should be given to such a paper even though another affidavit states that Ametrano said it was true. There is power to compel a person to make a needed affidavit, and when that power is not resorted to such second-hand unsworn statements should not be considered.

On the whole, after examining all the evidence, of which we have referred only to a part, we see no reason to reverse the conclusion of the learned counsel. We think that he properly held that all essential facts had been successfully controverted.

Much of what is said above applies to the appeal from the order of Judge Fursman vacating the attachment granted by him. That affidavit states nothing to show that the debt to Morrison was not owing honestly. The only allegation reaching the invalidity of the mortgage is that defendants remain in possession, " to all appearance managing, control-

ling and selling in the same manner as before." There is no statement that they have sold any goods; only that they appear to have sold them; and there is no statement that they are selling for their own use, or by consent of the mortgagor. As has been often stated, the affidavit must show facts. Von Moppes *v.* Leimbach, *ut supra.*

We think therefore that the order of Judge Fursman was correct and should be affirmed.

Reaching the above conclusion in regard to the appeal from Mr. Justice Edwards' order, it seems to be of no use to consider the appeal from the order of Justice Ingalls. If the attachment is set aside by the affirmance of the order of Justice Edwards on affidavits from both parties it is of no consequence whether the plaintiffs' affidavits were sufficient to support the second attachment if not opposed by counter affidavits.

We think it best, however, to reverse that order as a matter of form; lest an affirmance might lead to some complication.

Order vacating first attachment affirmed, with ten dollars costs and printing disbursements.

Order refusing to vacate second attachment reversed, without costs to either party.

Order vacating second attachment on opposing affidavits affirmed, with ten dollars costs and printing disbursements.

PUTNAM, J., concurs.

FISH, J. (dissenting).—After a motion to vacate the attachment in this case had been heard upon the case as made by plaintiff's affidavit, and denied, the defendants renewed the motion upon affidavits and notice. It was heard and decided at special term held before Mr. Justice Edwards, where an order was granted vacating the attachment. From that order this appeal is taken. The affidavit, upon which the writ was granted, sufficiently sets out a cause of action either on contract for the purchase price of the goods or in fraud, either

of which is sufficient for the purpose of this proceeding. The pleadings are not made part of the case, so that both the question of the cause of action as well as the alleged fraudulent proceedings of defendants rest upon the affidavits alone.

Upon the case stated in the affidavits the plaintiff may serve a complaint in an action on contract for the price of the goods sold, or in trover for converting them, or for damages resulting from the fraud of defendants in obtaining the goods.

Either would be an action in which an attachment might be granted. See § 635 Code of Civ. Pro. ; Bogart *v.* Dart, 25 Hun, 395. That plaintiff has brought another action in replevin to recover a portion of the goods has nothing to do with this case. That action will stand or fall upon the pleadings and proofs. The plaintiff may be beaten in that action, and yet be successful in this. He ought not to be beaten in both actions, if he is right in either.

The special term did not consider or pass on the question as to whether a sufficient cause of action was stated in the plaintiff's affidavit. The point was not raised there, nor is it presented by the defendants upon this appeal.

The only ground upon which the order vacating the attachment was granted was, that the facts stated in the affidavits upon which the writ was based were successfully controverted by the affidavits read by the defendants. The case ought to be heard and decided upon this appeal upon the same grounds taken at the special term. But on that question, if the plaintiffs, in their complaint, should say nothing about any fraudulent representations in the purchase of the goods, but declare simply for the purchase price of the goods sold to the defendants, they may yet claim the benefit of the fraudulent conduct of the defendants in obtaining the goods as a circumstance in aid of the charge that in the transaction with Morrison they intended it as a cover to hinder and delay their other creditors.

The salient points in the affidavit of Thompson are, *first,*

4

the charge of fraud by defendants in the purchase of the goods which constitutes the debt ; and, *second,* that the defendants were, at the time, insolvent, and gave a chattel mortgage to Morrison with intent to hinder and delay and defraud their creditors. Plaintiffs' affidavit states in substance that the last purchase of the goods by defendants was on the 28th day of January, 1889, to the amount of $786.02. It was on credit. That defendants were then, and had been, engaged in business at Troy, as manufacturers and selling goods, apparently in healthy financial condition. They had, a few days before that, purchased goods of plaintiffs on credit, to the amount of $694.45, and about a month before that another bill to the amount of $648.89, all of which sums, in aggregate amounting to the sum of $2,129.36, remained unpaid.

The plaintiffs' affidavit states that at the time of those purchases the defendants represented to plaintiff that they were worth $10,000 ; had that capital in the business ; had good backing at the National Bank of Troy ; were solvent and in good financial condition ; whereas, they knew the fact to be otherwise ; that they were at the time insolvent, and knew themselves to be so ; that they drew checks to plaintiffs upon said bank for a part of said purchases, which checks were returned by said bank dishonored ; that plaintiffs relied upon the representations of defendants in parting with their goods on credit ; that the defendants still owe them for the whole of said sum, less the goods recovered in replevin, stated at $900.

In corroboration of the charge that the defendants were perpetrating a fraud on plaintiffs, the affidavit shows :

*First.* That the checks which defendants gave to pay for part of the goods came back protested for want of funds at the bank.

*Second.* That on the thirtieth of January, just two days after they had bought of plaintiffs, on credit, goods to the amount of $786.02, they executed to Morrison, their banker,

a chattel mortgage upon everything they had, including the very goods so bought of plaintiffs, to secure the stated debt of $7,000, and caused the same to be made a public record ; that said mortgage was given to hinder, delay, cheat and defraud the creditors of defendants, and especially these plaintiffs. In corroboration of the charge of such fraudulent intent, the affidavit states that after the giving of the mortgage the defendants continued in possession of all the mortgaged property, managing, controlling and selling the same as they had done before the making of the mortgage, with the apparent assent of Morrison. The defendants and Morrison meet plaintiffs' affidavit with affidavits on their part, replete with denials of fraudulent intent, but do not deny the facts which constitute the basis of the charge of fraud. Morrison's affidavit denies that he intended any fraud, and controverts a great many other items of minor importance ; but does not deny that it was understood by and between him and defendants at the time of the giving of the mortgage, that they were to remain in possession and continue the business of managing, controlling, buying and selling and trading with the goods the same as they had done before, and that they did so continue in possession in pursuance of said understanding until after the issuing and levy of the attachment in this case. On the contrary, he admits, that up to the time of the issuing of the plaintiffs' attachments, the defendants were still continuing the business and that up to that time he had made no move on his mortgage, and not until the attachments were levied did he make any attempt to use his mortgage ; and then he did it because of the attachments.

Morrison states that he was informed and believed that defendants were solvent and doing well ; and yet at a time when he believed them to be solvent and doing well, he exacts a chattel mortgage upon all their effects and made it a public record. He states that he did not take any steps to enforce his mortgage until after the course of plaintiff had

nearly destroyed the business of defendants. That is to say, his chattel mortgage for a sum nearly equal to the highest estimate of the aggregate value of their property was a harmless thing and was intended to be so. It did not have the effect to weaken the credit or injure the business of defendants ; and would not have been enforced but for the attachments of plaintiffs. That then means, if it means anything, that the mortgage was only intended to be a cover to keep the other creditors off, to rest easy and let the defendants go on and do as they pleased with the property, so long as no other creditors sought relief ; and only to be used to protect defendants from their other creditors ; not to be used as a sword, but as a shield, when an emergency arose. This is the shape in which the affidavit of Morrison leaves the case. The affidavits of defendants do not deny that they purchased of plaintiff $786.02 in goods two days before they executed the chattel mortgage to Morrison ; they do not deny that they gave checks to plaintiff upon the bank of which Morrison was cashier to apply in part payment to plaintiff when they had no balance to their credit, and that the checks were returned dishonored. They deny that they were at the time insolvent, and yet they executed to Morrison and put on record a chattel mortgage for $7,000, when there was no need of it and when the highest sum they estimated their entire assets is $10,000. The defendants admit the giving of the chattel mortgage. They do not deny, rather tacitly admit, that it was not to be enforced except it became necessary to keep off other importunate creditors. They do not deny that they did actually remain in possession of the property, and, with the assent of Morrison, continued in the control and management, buying and selling the same as they did before the mortgage was given.

They allege that they were at the time perfectly solvent; and yet at such a time they committed the most destructive act of bankruptcy that a firm of business men could do. At a time when they were perfectly solvent and able to pay all

their debts, when Morrison so believed them, and when all their creditors were quiet, when it was not necessary to do so, they gave this extraordinary mortgage to Morrison, which advertised them to every business man as being on the face of things utterly insolvent ; and with innocent assurance these defendants continue to assert in their affidavit that they were able to pay and would have paid all their debts, including plaintiffs' debts, had not their business been ruined by the attachments of plaintiffs. The mortgage did them no mischief. It is quite evident that it was not intended to interfere with their business. It was given and intended as a notice to quit, to all other creditors, not to be used or enforced, so long as other creditors kept quiet, to enable the defendants to go on and market all their goods and apply the avails in the future as they saw fit, only to be given activity when it was necessary to defeat other creditors.

It is not necessary to go beyond the affidavits of Morrison and the defendants to make a clear case against them, showing a mortgage given solely as a cover, intended to hinder and delay the creditors of defendants and prevent them from realizing their debts out of defendant's property. Other affidavits were read on the motion in behalf of defendants. Other additional affidavits by plaintiffs tending to strengthen the charges of fraud. None of them in any wise help defendants out of the difficulty arising from their own statement of the case.

The chattel mortgage was an extremely radical one, evidently intended to leave nothing for any other creditor. It in terms covered the entire stock of goods manufactured and unmanufactured and in process of manufacture, and all supplies, including their electric motor, cutting machines, button-hole machinery, all machines of every kind, cutting boards, tables, shafting, patterns, boxes, stamps, and all other stock, machinery, tools, office furniture, and fixtures, owned by them, and contained in their factory at Mount Olympus ; and they were particular to add all their goods in laundry,

not forgetting their *trade mark.* Thus they made a clean sweep of everything owned by them. Morrison was at the time and continued to be cashier of a bank, and did not give the least attention to the business of manufacturing, leaving the defendants to go on and deal with the property the same as if he had no claim upon it.

On the case made by the defendants, the chattel mortgage was clearly fraudulent as against the creditors of defendants.

The mere absence of a delivery and change of possession of the mortgaged goods of itself is sufficient to render the mortgage presumptively fraudulent and void as against creditors, and conclusively so, unless good faith and the absence of any intent to defraud is made to appear.

Proof that defendants were indebted to Morrison for the amount named in the mortgage is not of itself sufficient to satisfy this requirement, much less so if at the time of the giving of the mortgage it was intended not only that defendants should remain in possession, but were to have the unrestrained management and control of the property, changing its character and selling and marketing the same at their pleasure, and for their own benefit.

Such a mortgage is fraudulent in fact, even though the debt secured be valid. One creditor has no right thus to lend himself to be used as a break-water against other creditors who may be pressing for payment. The statute has denounced such a transaction, and it is held to be fraudulent and void as against other creditors. Griswold *v.* Sheldon, 4 N. Y. 581, 584; Russell *v.* Winne, 37 Id. 591; May *v.* Walter, 56 Id. 8; Southard *v.* Benner, 72 Id. 424; Potts *v.* Hart, 99 Id. 168.

The attachments then were sufficiently justified, and they should be maintained

The order of the special term should be reversed, and the attachments reinstated; the order of the county judge of Rensselaer county reversed, and the attachment reinstated; and the order of Justice INGALLS, denying the motion to vacate, should be affirmed.

Ordered as stated in opinion of LEARNED, P. J.

NOTE ON "RESTITUTION AS CONDITION PRECEDENT TO RESCISSION."

Where the party defrauded, after knowledge of a fraud inducing a contract, proceeds in recognition or affirmance thereof, he is deemed, as a general rule, to have ratified it. Myers *v.* King, 48 Hun, 106; Schiffer *v.* Dietz, 83 N. Y. 300; Cobb *v.* Hatfield, 46 Id. 533; Baird *v.* Mayor, etc., 96 Id. 567; Strong *v.* Strong, 102 Id. 69.

A party who would rescind must rescind wholly, and leave no right flowing from him outstanding which imperils the completeness of the rescission. Francis *v.* N. Y. & B. E. R. R. Co. 108, N. Y. 93.

To entitle a party to rescind a contract because of the fact that he was induced to enter into it by means of false and fraudulent representations, he must return, so far as he may not be prevented from doing so by the act of the defendant, whatever he has received through the performance of the contract. Cohen *v.* Ellis, 52 Hun, 133. In the case last cited, this rule was applied to defeat an action to rescind a purchase of bonds which the plaintiff had surrendered pursuant to a scheme of organization, receiving therefor a less amount of securities of a different class.

A restitution of all a party receives under the contract is a condition precedent to the right of recovery in an action proceeding on a rescission of the contract and seeking to reclaim the money paid under it. Andrews *v.* White, 45 N. Y. St. Rep. 669. To maintain such action he must first restore, or offer to restore, to the other party, whatever may have been received by him by virtue of the contract. Id.; Vail *v.* Reynolds, 118 N. Y. 297.

A party who attempts to rescind a transaction on the ground of fraud is not required to restore that which in any event he would be entitled to retain either by virtue of the contract sought to be set aside, or of the original liability. Kley *v.* Healy, 127 N. Y. 555.

Where the party in any event will be entitled to receive from the party against whom the rescission is made more than the money he has on hand, he is not bound to return the money which he has received. Importers & Traders' Bank *v.* Everett, 21 N. Y. St. Rep. 98.

The rule requiring a party rescinding for fraud to restore what he has received, is satisfied where a depositor with an insolvent bank, who has received a dividend upon his claim against the bank, upon subsequently discovering its fraud in receiving the deposit of a draft and upon taking proceedings to trace the proceeds of such draft, relinquishes the right to future dividends upon that portion of his claim and consents to the retention from the amount of such dividend of an amount equal to that received on the first dividend upon the claim. Importers & Traders' Nat. Bank *v.* Peters, 123 N. Y. 272.

In a suit in equity to rescind a contract, restitution, while it need not be tendered before action brought, must be offered in the complaint. Duff *v.*

Note on " Restitution as Condition Precedent to Rescission."

Hutchinson, 57 Hun, 152. Unless this is done and it appears that it can be made, the suit will be dismissed without waiting until final judgment to determine whether restitution should or should not be made. Id.

The purchaser of a stock and business may maintain an action to rescind the sale and enjoin the enforcement of the purchase notes, for fraud on the part of the vendor, though a complete restoration is impossible by reason of the disposition of the original stock. Baker *v.* Ziegler, 56 Hun, 405.

A partial rescission, as a general rule, will not be adjudged, but it must be entire and complete to support the remedy. Myers *v.* King, 48 Hun, 106; Sinclair *v.* Neill, 1 Hun, 80. This rule, however, has its qualifications. When, by the act of the defrauding party, the situation is such as not to permit a complete reciprocal restoration in kind, the innocent party may be given protection by restoring the equivalent of that he received, or by doing that which may, so far as can be done, place the parties in the condition they were before the transaction sought to be rescinded was had. Id. A court of equity may, by its judgment, adjust the rights of parties in cases of this character. Id.

One seeking to recover goods from a fraudulent purchaser must return or tender the money paid therefor. Dolle *v.* Rhinehart, 55 Hun, 605. This rule is not applicable to an action for the recovery of the goods from the first person, who is not a *bona fide* purchaser for value. Id.

The equitable owner of a claim, who has effected a compromise thereof, cannot avoid its effect for fraud and maintain an action upon the original claim without restoring or offering to restore the benefit received. Thomson *v.* Sanders, 118 N. Y. 352. But such offer is not a necessary prerequisite to the maintenance of a counterclaim for damages or the deceit practiced in securing the compromise. Id.