JOHN WALLACE, RESPONDENT, *v.* GEORGE NODINE, APPELLANT.

57   239
f45ap293

*Vendor and purchaser of personal property — no delivery of possession — the presumption of fraud therefrom is not overcome by proof of an adequate consideration.*

In an action brought by a purchaser of personal property to recover the value of such property, against a constable, who had taken the property by virtue of an execution issued upon a judgment recovered against the vendor thereof, the court charged the jury "that even though the jury should find that there was no change of possession if the plaintiff, and the plaintiff's assignor, paid an adequate consideration for the property, the burden is upon the defendant to show that there was fraudulent intent."

*Held,* that, under the statute of frauds, the fact that there was no change of possession of the property created a presumption that the sale was fraudulent and void, and the burden of showing that the purchase was "in good faith and without any intent to defraud" was upon the plaintiff, and continued with him throughout the trial.

That while the proof of payment of an adequate consideration was undoubtedly strong evidence of such good faith for the consideration of the jury, yet it was not proper for the court to charge, as matter of law, that proof of the consideration, however adequate and abundant it might be, was sufficient to establish the fact that the purchase by the plaintiff was made in good faith and without any intent to defraud the creditors of his vendor.

APPEAL by the defendant George Nodine from a judgment of the Supreme Court, entered in the office of the clerk of the county of Onondaga on the 17th day of October, 1889, with notice of an intention to bring up for review upon such appeal the questions of law and fact disclosed by the record and proceedings upon the trial; and also an appeal from an order, entered in the said clerk's office on October 7, 1889, denying a motion for a new trial made on the minutes of the court.

The action was tried at the Onondaga Circuit before the court and a jury, and a verdict was rendered in favor of the plaintiff for the sum of $141.72. The action was brought for the recovery of certain personal property alleged to have been taken from the possession of the plaintiff by the defendant and sold.

The defense was that the defendant was a constable and took the property by virtue of an execution issued upon a judgment in favor of Charles King and another against James Wallace

and Earl Hazard; and that the property belonged to the defendants in the execution at the time of the levy and sale; and that plaintiff's claim thereto is through a sale of the property to him by James Wallace, with intent to hinder, delay or defraud the King brothers and other creditors. Plaintiff was the owner of a farm in the town of Spafford, which in 1885 he leased to James Wallace, his son, and Earl Hazard, his son-in-law, at the agreed rent of $300, payable on the 1st of April, 1886. On the 15th day of February, 1886, Earl Hazard and James Wallace executed to the plaintiff their promissory note in the sum of $512.54, and they executed a chattel mortgage upon certain personal property to secure the payment of the note. The genuineness of the indebtedness represented by the note was abundantly proven, and was conceded and not disputed by the defendant. In the fall of 1886 Earl Hazard and James Wallace seem to have come to the conclusion to give up the possession of the farm, and Hazard, who had kept house on the farm, moved off from it with his family, and James thereafter boarded with his father some two miles distant and performed some labor upon the farm taking care of the stock. On the 30th day of November, 1886, James Wallace executed and delivered to the plaintiff an instrument as follows:

"SPAFFORD, *November* 30th, 1886.

"I, for a valid consideration, have sold and conveyed to John Wallace the following property, viz.:

"One bin of oats; one do. of barley; one lot of loose hay; one lot of loose straw; together with all my right, title and interest in a lot of baled hay, all of which is now in his barns and is now in his possession.

"Received pay.

"JAMES WALLACE."

And at the same time plaintiff took possession of certain articles of personal property covered by the chattel mortgage upon an agreed valuation of $350, which was indorsed upon the note of $512.54; and simultaneously with that the plaintiff, as a part of the consideration for the property purchased, took up and paid a note given by James Wallace and Earl Hazard to one Prindell of about fifty dollars and the interest thereon, and on the 6th of December, 1886, James Wallace made, executed and delivered to Edgar I.

Bishop a bill of sale of the other articles of personal property described in the complaint, taking from Bishop his promissory note for $102, payable in a year, which was subsequently paid at maturity by Bishop. Bishop made an oral arrangement for the purchase of the personal property and also for the purchase of the farm, and on the third of February he made a written agreement for the purchase, and on the third of March the plaintiff conveyed to him by deed the farm, Bishop taking possession of the same in March, 1887, under his deed. George King and another recovered a judgment January 10, 1887, issued an execution which was levied upon the property described in the complaint, and the same was sold for the sum of $122.06; on April 24, 1889, Bishop assigned his interest in the property sold, or his right of action for the same, to the plaintiff.

*T. K. Fuller*, for the appellant.

*Franklin Pierce*, for the respondent.

HARDIN, P. J.:

Plaintiff was called as a witness in his own behalf and stated that Hazard left the premises in October, 1886, before the giving of the bill of sale and before the levy; and the plaintiff stated that before he left he came to his house and spoke to him upon the subject of leaving. When the witness was asked what Hazard said in that interview the defendant objected and excepted, and thereupon the counsel for the plaintiff allowed that by the evidence he wanted "to show whether he delivered possession or not;" and thereupon the court intimated that the witness might answer, and he did state as follows: "He said that he was going over the lake to drive stage and he would not stay on the farm any longer; and he gave me possession; I let him have the team to move him there." We think no prejudicial error was committed by receiving the evidence.

In *Hardenburgh* v. *Crary* (50 Barb., 32), the actual occupation of the premises which were the subject of dispute was directly in issue; here the question of who was in occupation of the farm, or how the possession of the farm was given up, rose incidentally.

We think the opinion of DENIO, Ch. J., in *Knapp* v. *Smith* (27 N. Y., 281), supports the ruling made by the trial judge; he says, viz.: "Trask, a witness examined for the plaintiff, was asked

whether she had been in the possession of the farm since the deed to her, and the defendant objected that the inquiry called for an opinion on a question of law. The objection was overruled, and the witness answered that they, the plaintiff and her husband, had been on the place ever since. I do not perceive any well grounded objection to the question, but the answer was a statement of a simple matter of fact, and one in respect to which, upon the whole case, there was not the slightest question."

(2.) Nor do we think it was error to receive the testimony of the plaintiff to the effect that he had made an arrangement with Bishop to sell him the farm and personal property for $4,000, after Hazard had left the farm and before the plaintiff purchased the personal property; nor in refusing to strike out the evidence after the same had been given.

(3.) When Earl Hazard was upon the stand as a witness he said that he left the farm about the middle of October, 1886, and that on the morning that he left he saw the plaintiff. He was then asked to state "What did you say to him about giving up possession of the premises?" This was objected to and the objections were overruled, and the defendant excepted. The witness answered: "I said to him that I was going away and he had better see about his property; I was going away; going to move off from the place, and I asked him that morning for his wagon to move with; I said, you had better see to your property, I shall not have anything more to do with it; I went away that day; I left the stuff there with James; I didn't disturb any of it." We see no error in receiving this evidence which would warrant us in disturbing the ruling.

(4.) The ruling at folio 172 seems to have been placed upon the ground that the question asked for the contents of the note, and the objection was taken in effect that the note was the best evidence. We see no error in the ruling.

(5.) Nor do we think it was error to allow the witness John Wallace to state that, at the time Hazard went away, he, in a conversation held with James, stated that "he would leave the property in my hands, and I could dispose of it, pay the debts and do what I liked with it." We think it was competent to prove parol authority in that manner, which was obviously the purpose for which the evidence was received.

(6.) We see no error in limiting the inquiry to the witness George King, as to the conversation he had had with the plaintiff on an occasion in a settlement of " his own matters." Apparently nothing was excluded which bore upon the issue between the parties in this action.

(7.) After the trial judge had, in a very elaborate and careful charge, commented upon the questions of fact for the consideration of the jury upon the evidence, several requests were made to him by the counsel for the respective parties. Among them, at the instance of the defendant, he charged as follows? " If the jury find, from the evidence, that the property in question was in the actual possession of one of the defendants in the execution when levied upon and sold by the constable, the sale to the plaintiff is presumptively fraudulent under the statute as against the creditors of the vendor, and it requires satisfactory proof of good faith to overcome that presumption." He also charged : " If the jury find, from the evidence, that the plaintiff had knowledge of the indebtedness of James Wallace and Hazard to the King Brothers, and took this bill of sale to enable James Wallace and Hazard to cheat, hinder and delay their creditors, and such sale was merely a wash between the parties to it, to accomplish that purpose, such a sale is void under the statute." He also charged : " The burden would be upon them if there was no delivery or actual and continued change of possession." And he also charged : " Where the seller retains possession of the property after the sale, the rights of the buyer, as against creditors, depend on the honesty and fairness of the transaction." He also charged : " That the statute of frauds is imperative that a sale of chattels must be accompanied by a continued change of possession to avoid the presumption of fraud." And he also charged : " That the fact that an adequate consideration was paid by the vendee upon a sale of goods, unaccompanied by immediate delivery and actual and continued change of possession, is not conclusive evidence that the sale was made in good faith and without intent to defraud the creditors of the vendor." And he also charged : " That where a sale of goods and chattels is not accompanied by immediate delivery or followed by an actual and continued change of possession, the presumption of fraud raised by the statute in such case makes that question one of fact for the jury, although the evidence as to good

faith and absence of intent to defraud is uncontradicted." In yielding to the last request, the judge observed : " I charge that. Uncontradicted by direct evidence, I suppose you mean ;" to which the counsel for the defendant responded, " Yes, sir ;" thereupon the court observed, "I charge that." Then the plaintiff's counsel propounded to the court a request in the following language, viz. : That even though the jury should find that there was no change of possession, if the plaintiff and the plaintiff's assignor paid an adequate consideration for the property, the burden is upon the defendant to show that there was fraudulent intent." The court responded, " Yes, I charge that." Exception was taken by the defendant. In considering the question made upon the charge as given by the trial judge, it must be borne in mind that " an appellate court will not seize hold of isolated portions of a charge for the purpose of discovering error. If the charge, as a whole, conveys to the jury the correct rule of law upon a given question, the judgment will not be reversed." (*Caldwell* v. *N. J. Steamboat Co.*, 47 N. Y., 282 ; *People* v. *Dimick*, 107 id., 26.)

Section 5 of title 2 of the Revised Statutes (vol. 3 [7th ed.], 2328), which provides : " Every sale made by a vendor of goods and chattels in his possession, * * * and every assignment of goods and chattels, by way of mortgage or security, * * * unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, * * * and shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intent to defraud such creditors or purchasers," was referred to by the learned trial judge, and the substance thereof stated with clearness and accuracy to the jury. When he yielded to the request made by the plaintiff he doubtless did so in deference to section 5 of title 3 of the Revised Statutes (3d vol., 2330), which provides as follows : " The provisions of this chapter shall not be construed, in any manner, to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his imme-

diate grantor, or of the fraud rendering void the title of such grantor."
By section 4 of title 3 it is provided, viz.: "The question of fraudu-
lent intent in all cases arising under the provisions of this chapter
shall be deemed a question of fact, and not of law ; "   *   *   *

In considering the requirements found in section 5 of title 2,
quoted above, in *Stimson* v. *Wrigley* (86 N. Y., 336), FINCH, J.,
says: " To permit a continued possession in the vendor encourages
transfers of mere title to defeat creditors, while the debtor's bene-
ficial use of the property leaves him practically the owner and tends
to give him a credit to which he is not entitled.   As an honest pur-
chaser buys because he wants the property and its possession and,
therefore, naturally and usually takes it, the absence of this fact
indicates some purpose different from that of an honest purchaser
and requires proof of good faith and honest intention."   These
remarks furnish a sensible explanation of the provisions found in
section 5, where it is declared that a sale " unless the same be accom-
panied by an immediate delivery and be followed by an actual and
continued change of possession, of the things sold, mortgaged or
assigned, shall be presumed to be fraudulent and void as against the
creditors of the vendor   *   *   *   and shall be conclusive evidence
of fraud."   By virtue of this statute every sale of property not
followed by a change of possession is to be presumed fraudulent
and void.   That presumption remains and continues, and the non-
change of possession becomes conclusive evidence of fraud, unless
it shall be made to appear on the part of the persons claiming under
such sale or assignment that the same was made in good faith and
without any intent to defraud such creditors or purchasers.   To
avoid the force of the presumption ; to avoid the " conclusive evi-
dence of fraud " found in the omission to change possession, the
burden is cast upon the vendee to make it appear that the purchase
by him " was made in good faith and without any intent to defraud
such. creditors or purchasers."

BRADISH, President, in *Hanford* v. *Artcher* (4 Hill, 301), in
dealing with the presumption and " the evidence " mentioned in the
statute, suggests that it has been claimed " that the vendee or assignee
of chattels, leaving them in the possession of the vendor or assignor,
is in itself fraud."   He combats that idea and insists that what the
statute does " is to raise a presumption of fraud, which becomes

conclusive, unless good faith and absence of intent to defraud be made to appear;" and then he adds: "But if the sale or assignment be shown to have been made in good faith and without any intent to defraud, the presumption of fraud raised by the statute is fully rebutted. There can be no presumption of fraud in a transaction which has been proved to be without fraud." And at page 319 of the same opinion it is stated in regard to the statute, viz.: "1. It has abolished the distinction sometimes attempted to be drawn between absolute sales and conditional assignments, and thus avoided the question whether continued possession in the vendor or assignor be consistent or inconsistent with the deed. 2. It declares what shall rebut the evidence of fraud raised by the statute from a want of change of possession, viz., good faith and absence of intent to defraud. 3. It throws the burden of proof of such good faith and absence of intent to defraud upon the party claiming under the sale or assignment. 4. It declares the question of fraudulent intent to be a question of fact, and not of law. * * * The statute very properly throws the burden of proof on the party claiming under the sale or assignment, and while it prescribes what shall rebut the evidence of fraud raised by the statute, and submits that as a fact to be determined by the jury, it leaves the court in the unimpaired possession and exercise of all its proper prerogatives of deciding upon the legality, competency and relevancy of testimony, but not upon its weight and sufficiency on a question declared by the statute to be one of fact. These belong properly to the jury."

In *Griswold* v. *Sheldon* (4 Comst., 592), in referring to a charge delivered upon questions arising under the statute referred to, BRONSON, J., said: "Instead of telling the jury that the mortgage was not void in law, he should have told them that, because the possession was not changed the mortgage was presumed in law to be fraudulent and void as against creditors and *bona fide* purchasers. Such is the rule of the common law, and such are the words of the statute (2 R. S., 136, § 5); and instead of telling the jury that they must pass upon the question whether the mortgage was made to defraud the creditors of Burdick, thus, in effect, leaving the onus of proving the fraud upon the creditor, he should have told the jury that the law presumed the fraud, and cast the burden of disproving it upon the person claiming under the mortgage. Such is the plain

declaration of the statute. * * * They should not be left to find that there is no fraud, because there is no direct evidence of that fact; but they should be told that fraud is presumed from the fact of unchanged possession, and that this evidence of fraud is conclusive, not such evidence as they may disregard, but, in the words of the statute, ' conclusive evidence,' unless the person claiming under the conveyance has proved that the same was made in good faith, and without any intent to defraud."

In *Waterbury* v. *Sturtevant* (18 Wend., 363), Senator EDWARDS, in dealing with a question of fraud, observed: "I admit that if property is sold for the purpose of preventing or delaying the collection of a debt, and the purchaser, knowing the fact, makes the purchase for the purpose of aiding that intent, the sale is fraudulent, although a fair consideration has been paid. The question of fraud depends upon the motive of the parties, the purchase must be *bona fide* as well as upon a valuable consideration."

In *Billings* v. *Russell* (101 N. Y., 226), the case of *Waterbury* v. *Sturtevant* (*supra*), was referred to with approval in the opinion of RUGER, Ch. J. It was held in *Billings* v. *Russell*, " the fact that a mortgage was given, or it seems that property was transferred, by a debtor for a valuable consideration, is not, as a proposition of law, inconsistent with the existence of an intent on the part of the debtor to defraud his creditors, or of such knowledge thereof on the part of the mortgagee or purchaser as will avoid the mortgage or conveyance, and in this regard no distinction can be made between the consideration furnished by an existing debt and that arising in any other manner. When there is an actual intent to defraud, no form in which the transaction is put can shield the property transferred from the claim of creditors. Proof, therefore, that a mortgage executed by an insolvent debtor was given to secure a debt actually owing by the mortgagor does not, as matter of law, disprove the existence of a fraudulent intent on the part of the debtor." In the course of the opinion in that case the chief judge observed: "We are of the opinion, however, that the fact of the payment of a valuable consideration upon a transfer of property is not, as a proposition of law, inconsistent with the existence of an intent to defraud, and that, in the application of this principle, no distinction can be made between the consideration furnished

by an existing debt or one arising in any other manner. It is undoubtedly evidence, and usually strong evidence, of the intent with which the conveyance is made, but is simply a circumstance to be considered by the court in determining the question of intent. The statute itself declares all conveyances made with a fraudulent intent absolutely void, except in the case of those made upon a good consideration and in ignorance on the part of the purchaser of the fraudulent design of his grantor. It contains, therefore, the strongest implication that the payment of a valuable consideration is not inconsistent with the existence of an intent to defraud, and of such knowledge, on the part of the purchaser, of the fraudulent design as will avoid a conveyance made to him, even though accompanied by the payment of an adequate consideration. The vice in the argument of the court below, if any there is, seems to be in its assumption that the mere payment of a good consideration by the vendee, upon the transfer of property by an insolvent debtor, as matter of law, disproves the existence of a fraudulent intent in such a transaction." At the conclusion of the opinion from which the above quotations have been made it is said, viz.: "From this review of the authorities it seems clear that, where there is an actual intent to defraud, no form in which the transaction is put can shield the property so transferred from the claims of creditors, even though a full and adequate consideration be received for the same." Here we have a case of the non-change of possession; and that fact, by virtue of section 5 of title 2, gives rise to the presumption 'that the sale was fraudulent and void; and it is also "conclusive evidence of fraud," by the very terms of the statute, unless it is "made to appear" on the part of the plaintiff, who is the person "claiming under such sale or assignment, that the same was made in good faith and without any intent to defraud such creditors or purchasers." The onus of making it appear that the purchase was "in good faith, and without any intent to defraud," was upon the plaintiff. The burden of giving proof that should answer the requirements of the statute was upon the plaintiff, and continued with him throughout the trial.

In *Tilson* v. *Terwilliger* (56 N. Y., 273), which was a case where there was not an immediate and continued change of possession under a bill of sale, it was said by FOLGER, J., on page 276: "The statute is imperative that the sale must be followed by a continued

change of possession or it shall be presumed to be fraudulent. It is, then, upon the vendee to make it appear that the transaction was in good faith and with no intent to defraud. This is a question for the jury; and whatever other rules of law there may be, in our judgment, it should in this case have been submitted to them. Here was a presumption in favor of the defendants, growing out of the possession found in the vendor. Against this was the testimony of the vendee alone. His credibility in such a position was in issue. We do not think that when there is on one side the presumption against the legality of the transaction which the statute makes, and on the other the vendee seeking, by his own oral testimony alone, to repel that presumption, that the matter may be taken from the jury and passed upon by the court as a question of law."

In making out the affirmative of the proposition resting upon the plaintiff, proof of payment of adequate consideration undoubtedly was strong evidence, persuasive evidence, for the consideration of the jury, but as the statute in its fourth section has provided that questions of fraudulent intent arising under the statute shall be deemed questions of fact, and not of law, it is not within the province of the court to hold, as matter of law, that the proof of the consideration, adequate and abundant though it be, was sufficient to establish that the purchase by the plaintiff was " made in good faith and without any intent to defraud " the creditors of his vendor.

Mr. Stephens, in his Digest of the Law of Evidence, states in article 93, at page 152: " Whoever desires any court to give judgment as " to any legal right or liability dependent on the existence or non-existence of facts which he asserts or denies to exist, must prove that those facts do or do not exist." With that rule before us, it may be observed that the plaintiff sought the verdict of the jury to the effect that his purchase was made in good faith and without any intent to defraud, which facts he was required to prove to overcome the presumption of fraud and the " evidence of fraud " furnished by the non-change of possession of the property purchased; he was required to prove his good faith, and that his purchase was " without intent to defraud."

Mr. Stephens also says, in article 95, page 153, that the "burden of proof in any proceeding lies at first on that party against whom the judgment of the court would be given if no evidence at all were

produced on either side." * * *    Applying the rule to the case in hand, it may be observed that the judgment of the court would be given, if no evidence at all were produced after the fact appeared that there was not a change of possession of the goods purchased, against the plaintiff. The plaintiff, therefore, took the burden and must carry " through the case the burden of the facts he is bound to prove."

In *Siedenbach* v. *Riley* (111 N. Y., 560 ; S. C., 20 N. Y. St. Rep., 124), EARL, J., in dealing with the effect of a non-change of possession, said, viz. : " Here, as we have before stated, the jury were authorized to find that this sale was not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the property sold. And here the presumption that it was fraudulent and void as against creditors was conclusive unless the plaintiff made it to appear that the sale was made in good faith and without any intent to defraud creditors. *The burden was upon him to make this appear*, and we are of opinion that there was evidence from which the jury could find that the plaintiff had failed to show that the sale was in good faith and without any intent to defraud."

We think the sense of the charge complained of was to the effect that, after the jury had found that there was no change of possession, and after they had found that the plaintiff and his assignor " paid an adequate consideration for the property, the burden is upon the defendant to show that there was fraudulent intent." Such a charge, in effect, as a ruling, as a matter of law, is, that proof of an adequate consideration overcomes the presumption that the purchase is fraudulent and void ; overcomes the evidence of fraud which arose from the non-delivery of possession of the property, and relieves the plaintiff from the burden cast upon him by section 5, to make it appear on his part that the sale was " made in good faith and without any intent to defraud the creditors of his vendor."

Our attention is called to *Leach* v. *Flack* (31 Hun, 606) in aid of the contention of the plaintiff. In that case the referee in the court below had refused to sustain the ownership of the plaintiff in certain property purchased by her of her son under a bill of sale by reason of the non-change of possession. " Although he also found the fact to be established by the evidence that the plaintiff was no party to

the fraud, but received the bill of sale without notice of her son's embarrassment in business and without any intention to hinder, delay or defraud any of the existing or subsequent creditors of the vendor." He also found " that she had no knowledge of any intention on his part to deceive or defraud any of his creditors." And after such findings of fact were made it was held by the court that to deny her the right of recovery was erroneous, following the law as laid down in *Dudley* v. *Danforth* (61 N. Y., 626). In the latter case the referee had found " that the purchase and sale was made in good faith for the purpose of paying to plaintiffs an honest debt owed by Edget to them ; " and it was held that after such a finding of fact made it would be unavailing to find that the " transfer was made with intent on the part of Edget to hinder and delay his creditors, and that the plaintiffs had previous notice of such intent on the part of Edget," " without a further finding that plaintiffs participated in such intent." We see nothing in the case which reaches the question involved in the case in hand.

In *Starin* v. *Kelly* (88 N. Y., 420) it appeared that the plaintiff before levy " purchased the property of Besson, and that at the time of the levy he had the property in his possession," and the questions of fact were found in favor of the plaintiff ; and the only questions of law determined in the case related to the rulings upon the trial, and under the issue in that case it was said, viz. : " To maintain the issue on the part of the defendant it was sufficient for him, in the first instance, to show Besson's fraudulent intent *in making the sale.* Then it was for the plaintiff to show that he purchased the property for a valuable consideration. His title would then be unimpeachable unless the defendant should make it appear that he had previous notice of Besson's fraudulent intent and that he participated in the fraud. * * * In *Waterbury* v. *Sturtevant* (18 Wend., 355), it was held that the question of fraud in such a case may depend upon the motive of both parties ; that the purchase must be *bona fide* as well as upon a valuable consideration ; and that the fraudulent intent of the grantee may be inquired into was also decided in 43 Barbour, 448." We think the case does not support the contention of the plaintiff.

Our attention is called to *Mitchell* v. *West* (55 N. Y., 107), where it was held that a purchaser, under a bill of sale, " unaccompanied by delivery and change of possession, is not required by the statute

of frauds (2 R. S., 136, § 5) to show, as against the creditors of the vendor, in addition to the proof of, or in order to establish the *bona fides* of the sales, that there was a valid excuse for leaving the property in the vendor's possession." In that case it was claimed " that in addition to proof that the sale of the chattels was *bona fide*, and that there was no intent to defraud the creditors of the vendor, it was necessary to show some valid excuse or reason for leaving the property in his possession." The court held that such excuse or reason need not be shown, following the memorable decision in the Court of Errors in *Hanford* v. *Artcher* (4 Hill, 271). It is said by the learned counsel for the appellant, that " if the intent of the plaintiff and his assignor was honest in purchasing the property, it makes no difference whether there was any change of possession whatever ; " but, as we have already seen, the question of the intent of the plaintiff is one of fact, which must be left for the jury to determine ; and when the want of change of possession appears in a case, then the statutory presumption is against the plaintiff, and the burden is upon him to relieve himself from the presumption furnished by force of the statute by the non-change of possession. Possibly the trial judge may have been of the opinion that there had been a change of possession ; but, upon the evidence given upon that subject, it was his duty, in obedience to the requirements of the provisions of the statute, that questions arising thereunder should be regarded as questions of fact, and not of law, to submit that question to the jury ; and the same duty remains with this court to regard the question as a question of fact, and not a question of law, and, therefore, it is not appropriate for this court to assume that an erroneous instruction to the jury on the subject of the burden of proof may not have influenced the jury in reaching a verdict adverse to the defendant. We think the instruction was erroneous, and by reason thereof the verdict should not be allowed to stand.

MARTIN, J., concurred ; MERWIN, J., dissented.

Judgment and order reversed on the exceptions and a new trial ordered, with costs to abide the event.