ROBINSON et al. v. HAWLEY et al.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. JUDGMENTS—CONFESSION—STATEMENT—RIGHT TO IMPEACH.
    Where certain notes which were the basis of a confession of judgment were indorsed by the judgment creditor to a bank under an arrangement that the creditor was to be allowed to check against them, but, if they were not paid at maturity, they were to be charged back to the creditor without protest, and the notes were held by the bank at the time of the confession, the judgment debtor or subsequent chattel mortgagees were not entitled to impeach the judgment on the ground that the statement in the confession that the notes were owned by the creditor was false, since such creditor was contingently liable thereon.

2. SAME—WITHHOLDING FROM RECORD—EFFECT—FRAUDULENT PREFERENCE.
    Where a debtor confessed judgment under an agreement that it should not be put on record so long as she made monthly payments thereon, and, in case suit should be brought against her, she would notify plaintiffs, in which event they were at liberty to enter and collect the judgment, such judgment did not create a fraudulent preference as against claims of third parties, not shown to have arisen out of any transaction subsequent to such confession, and hence they were not in a position to attack its validity.

3. CHATTEL MORTGAGES—VALIDITY—POSSESSION BY MORTGAGEE—REASONABLE TIME—BURDEN OF PROOF.
    Where chattel mortgages were not accompanied by immediate delivery, and followed by actual and continued change of possession of the mortgaged property, as required by 2 Rev. St. (9th Ed.) c. 7, tit. 2, § 5, p. 1886, they are void as against a judgment creditor of the mortgagor whose judgment was filed after the execution of the mortgages, but before they were filed, though the mortgagees were entitled to a reasonable time within which to take possession, it being shown that they did not take immediate possession, they having failed to show that the time was not unreasonable; since the burden of proof that they took possession within a reasonable time was on them.

4. SAME—REVIEW—FAILURE TO OBJECT.
    Where, in a creditors' suit to set aside chattel mortgages as fraudulent, it was proved without objection that the mortgagees did not take immediate possession of the property, and that there was no immediate change of possession, as required by 2 Rev. St. (9th Ed.) c. 7, tit. 2, § 5, p. 1886, defendant cannot object to such evidence showing statutory infirmity of the mortgages for the first time on appeal, on the ground that no such cause of action was alleged in the complaint.

5. SAME—FRAUDULENT MORTGAGES—EVIDENCE.

Defendant, being indebted to plaintiffs, confessed judgment in their favor under an agreement that plaintiffs were not to file the same so long as defendant made certain monthly payments, and did nothing to impair plaintiffs' security; and that if, before the judgment was paid, any of her other creditors should bring suit against her, she was to notify plaintiffs, who were to enter and collect their judgment. Defendant subsequently substituted chattel mortgages in violation of her agreement. It appeared that while defendant was assuring plaintiffs that, if they would defer entering their judgment for a few hours, her father would pay the same, her attorney was preparing the chattel mortgages in controversy. *Held*, that such mortgages were fraudulent in fact against such judgment creditors.

Appeal from equity term, Steuben county.

Action by Orrin P. Robinson and another against Mina L. Hawley and others to set aside chattel mortgages as fraudulent. From a judgment in favor of plaintiffs, defendants appeal. Affirmed.

Prior to the 10th day of March, 1897, the defendant Mina L. Hawley was engaged in carrying on a small mercantile business at the village of Cameron, Steuben county, and while thus engaged had purchased goods, wares, and merchandise of the plaintiffs, who, under the firm name of Robinson & Gamman, were conducting business as dry-goods merchants at the city of Corning. In part payment of the goods thus purchased, Mrs. Hawley had given to the plaintiffs three promissory notes, signed by her, and payable to their order. One of these notes, bearing date the 11th day of December, 1896, was for the sum of $296; another, dated January 7, 1897, was for $226; the third, dated February 12th, was for $198; and all were payable in three months after their respective dates. On the day first above mentioned Mrs. Hawley made and executed a confession of judgment to the plaintiffs for the sum of $908.26, which sum represented the amount of the above-mentioned notes and a balance due upon account for goods, wares, and merchandise theretofore purchased of the plaintiffs. At the time of the execution of this confession Mrs. Hawley, through her husband and agent, requested the plaintiffs not to file and enter the same; and, in order to induce them to keep the judgment from the records, and give her an extension of time in which to satisfy the amount thereof, she agreed to pay to the plaintiffs $100 each month until the entire sum was paid, and that in the meantime she would do nothing to impair the plaintiffs' security. She further agreed that if, at any time before the plaintiffs' judgment was paid, any of her other creditors should bring suit against her, she would notify the plaintiffs, in which event they were to be at liberty to enter and collect their judgment in the usual way. Relying upon this assurance, the plaintiffs agreed to withhold their judgment from record as long as Mrs. Hawley made her payments, and gave no preference to her other creditors, and in pursuance of such agreement the confession was placed in the safe of the plaintiffs' attorney. Thereafter, and on the 6th day of May, 1897, without the knowledge or consent of the plaintiffs, Mrs. Hawley executed and delivered four chattel mortgages upon her stock of goods to secure eight of her creditors, for an indebtedness amounting in the aggregate to about $1,800. Two of the creditors thus secured were her father and mother, and the amount which she claimed to be owing them was $1,000. Immediately upon learning of the execution of these mortgages, the plaintiffs filed their confession, entered judgment, and issued execution to the sheriff of Steuben county, who thereupon levied the same upon the goods, wares, and merchandise covered by the chattel mortgages. Thereafter, and on the 14th day of May, 1897, this action was brought in aid of such execution, and to have the chattel mortgages declared fraudulent and void as against the plaintiffs' judgment. Issue was joined therein, and the case was tried by the court without a jury. Judgment was subsequently rendered in favor of the plaintiffs, and from that judgment this appeal is brought. Such further facts as are material will be stated in the opinion which follows.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

F. A. Robbins, for appellants.
De Merville Page, for respondents.

ADAMS, J. If it be true, as is alleged, that the defendants, or any of them, are seeking to gain possession of the personal property levied upon under the plaintiffs' execution in virtue of certain chattel mortgages, which, as against such execution, are fraudulent and void, there can be no question as to the right of the plaintiffs to invoke the aid of a court of equity to establish the priority of the lien: acquired by them under their execution, provided the judgment upon which such execution was issued is a valid one. Bates v. Plonsky, 28 Hun, 112; People v. Van Buren, 136 N. Y. 252, 32 N. E. 775, 20 L. R. A. 446; Crippen v. Hudson, 13 N. Y. 161–166. We do not understand that this proposition is seriously controverted, but it is claimed that for various reasons, which will be hereafter considered, the facts of this case do not entitle the plaintiffs to the relief sought. One of the reasons thus assigned is the defective character of the statement which furnishes the basis for the confession of judgment; the contention being that the statement fails to comply with the requirements of the statute, in that it does not fully and concisely set forth the facts out of which the debt arose; and, furthermore, that such facts as are stated are false. It is possible that within some recent decisions the statement in question is not as full and explicit as it ought to be (Code Civ. Proc. § 1274; Wood v. Mitchell, 117 N. Y. 439, 22 N. E. 1125; Bradley v. Glass, 20 App. Div. 200, 46 N. Y. Supp. 790; Blackmer v. Greene, Id. 532, 47 N. Y. Supp. 113, affirmed in 154 N. Y. 749, 49 N. E. 1093), but it certainly is: sufficiently so to render it valid as between the parties thereto (Miller v. Earle, 24 N. Y. 110; Harrison v. Gibbons, 71 N. Y. 58); and it consequently furnishes ample authority for the plaintiffs to impeach a fraudulent transfer by the judgment debtor (Neusbaum v. Keim, 24 N. Y. 325). The allegation of falsity rests in the main upon these facts: The notes specifically mentioned in the statement, when received by the plaintiffs, were indorsed by them, and deposited in bank, under an arrangement by which they were to receive credit therefor, and be allowed to check against them; but, in the event that they were not paid at maturity, they were to be charged back to the plaintiffs, without protest. This, it is insisted, was equivalent to a sale of the notes to the bank, and, inasmuch as they were all held by the bank at the date of confession, it is further insisted that it could not be truthfully asserted, as it was in the statement, that they were owned by the plaintiffs. Strictly speaking, this may be true, for unquestionably for the time being the notes were, in a certain sense, owned and held by the bank; but the transfer was conditional, and, if the notes were not paid when due, the plaintiffs were liable upon them, and would be required to pay them. In short, as was stated by one of the plaintiffs upon his direct examination, "They [the notes] are supposed to belong to us un-

til they are paid." It is not disputed that these notes were valid, existing obligations upon the part of the defendant Hawley; neither is there any question as to the contingent liability of the plaintiffs thereon; and, in view of the circumstances under which they were transferred to the bank, we do not see how, within the principle of the authorities last cited, the validity of the confession can be impeached either by the judgment debtor or by any person other than a bona fide creditor or lienor.

In this connection it will be pertinent to consider the allegation of active and affirmative fraud which is set up in the defendant's answer, for while not denying that Mrs. Hawley was honestly indebted to the plaintiffs, or that the notes given by her correctly represented the amount of such indebtedness at the time they were given, it is nevertheless insisted that the scheme by which such indebtedness was secured to the plaintiffs was fraudulent and void, in that the confession of judgment was to be kept secret, and its entry deferred, to the end that Mrs. Hawley might continue her business, and purchase additional goods upon credit from other dealers, the effect of which would be to enhance the value of the plaintiffs' security during the period intervening its execution and enforcement. This contention would undoubtedly possess much force if there was anything in the record to support it save the bare fact that the plaintiffs did, at the urgent solicitation of their debtor, agree not to make their judgment a matter of record, and thereby impair her credit; but there is not a scintilla of proof to indicate that this agreement was entered into with a fraudulent intent upon the part of the plaintiffs to obtain any additional security at the expense of Mrs. Hawley's other creditors. On the contrary, it appears that the day before the confession was given the plaintiffs learned that Mrs. Hawley had suffered judgment to be taken against her by an Elmira grocer, and, being naturally desirous to protect themselves, the plaintiffs sent a member of their firm to see her, and, if possible, obtain some security for their debt. After a conference with her and her husband, it was proposed that she should confess judgment for the amount owing by her. This proposal was not favorably considered by her at first, and it was only acceded to upon the plaintiffs agreeing to hold the confession simply as security, provided the defendant would make certain specific payments thereon, and do nothing in the meantime to impair such security; all of which she promised to do. It is true that one effect of this agreement was to give the plaintiffs a preference and advantage over other creditors, but we are unable to perceive wherein that renders it fraudulent, for the law does not condemn a preference to a bona fide creditor by a debtor in failing circumstances, even though the agreement by which such preference may be created is concealed from the general creditors. Thus, an agreement entered into between the vendor and vendee that in case of the insolvency of the latter he will protect the former by a preference to the amount of his just claim has been held not to be a fraud in law upon other creditors, which would avoid a preferential assignment made in pursuance thereof. Bank v. Whitmore, 104 N. Y. 297, 10 N. E. 524; Smith

v. Munroe, 1 App. Div. 77, 37 N. Y. Supp. 62; Steam-Heating Co.. v. Ransom, 16 App. Div. 258, 44 N. Y. Supp. 623; Smith v. Craft, 123. U. S. 441, 8 Sup. Ct. 196; London v. Martin, 79 Hun, 229, 29 N. Y. Supp. 396; Drury v. Wilson, 4 App. Div. 232, 38 N. Y. Supp. 538. Suppose, instead of executing a confession of judgment on the 12th day of March, Mrs. Hawley had then entered into a secret agreement with the plaintiffs that she would pay them $100 per month until their entire debt was paid, and that, in the event of her failure to make such payments, or in case suit was brought against her by another creditor, she would confess judgment to the plaintiffs for the amount remaining unpaid upon their debt, could it be successfully contended that such an agreement would avoid a confession made in pursuance thereof? And, if not, why should the one entered into between the parties, which does not differ in principle from the one suggested by way of illustration? It is quite possible that if a dealer who was actually insolvent should purchase goods upon credit, without disclosing the fact that he had theretofore agreed to prefer another creditor in a certain contingency, he would not, in the event of executing such agreement, obtain title to the goods thus purchased, either for his own benefit or that of his preferred creditor. Hyman v. Kapp, 9 N. Y. St. Rep. 691. But in the present case there is no evidence that the claims of the defendants, or either of them, arose out of any transaction with Mrs. Hawley subsequent to the time the plaintiffs' judgment was confessed, and consequently we do not see how they are in a position to assert that the plaintiffs' judgment is, under the circumstances disclosed by the record, invalid.

The next and only remaining proposition upon the part of the appellants which we deem it necessary to consider is that the plaintiffs have failed to establish the fact that the defendants' chattel mortgages are fraudulent. To meet this contention, it is asserted that there is nothing in the case to repel the presumption which the law creates that the defendants' mortgages were fraudulent by reason of the fact that they were not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the mortgaged property as required by the statute (2 Rev. St. [9th Ed.] c. 7, tit. 2, § 5, p. 1886; Wallace v. Nodine, 57 Hun, 239, 10 N. Y. Supp. 919); and such is undoubtedly the fact, for it appears that the morning after these mortgages were filed the mortgagor's husband was in charge of the store, making sales, and conducting the business precisely as he had theretofore done, and that there had been nothing in or about the store to indicate that there had been any change of proprietorship or possession. Indeed, it appears that at this time at least two of the mortgages had not been delivered, and that the mortgagees therein named were not even aware that their claims had been thus secured. But it is argued that there are two answers to this assertion, one of which is that the mortgagees were entitled to a reasonable time in which to take possession of the mortgaged property, and the other is that the complaint contains no allegation that the defendants' mortgages were fraudulent by reason of any statutory infirmity. It may be assumed, for

the purposes of this review, that the learned counsel is correct in. both of the propositions thus advanced; but their force is materially impaired by the fact that no evidence was given to show that the failure upon the part of the defendants to take immediate possession of the mortgaged property was, under the circumstances of the case, unreasonable, and by the further fact that no objection was made to the evidence given by the plaintiffs of such failure. Had the defendants been called to the witness stand, it is quite possible that they might have furnished some evidence that the delay in the change of possession was not unreasonable; but this they failed to do, and, as the burden of explanation was upon them, they must suffer the consequences of such failure. So, too, as regards the second proposition. Had an objection been taken to the admission of any evidence not pertinent to the issues raised by the pleadings, it would doubtless have been sustained; but, inasmuch as such evidence was received upon the trial without objection, it is now too. late for the defendants to claim as a ground of reversal that the recovery was for a cause of action not set forth in the complaint. Vann v. Rouse, 94 N. Y. 401; Wells v. Association, 120 N. Y. 630, 24 N. E. 276. However, we think there was sufficient in the case to warrant the trial court in finding that the defendants' mortgages. were fraudulent in fact as against the plaintiffs' judgment. So far as the mortgagor herself is concerned, there can, of course, be no question but that she executed the mortgages to the defendants in violation of her solemn agreement with the plaintiffs, and with the obvious intent to deprive the latter of the benefit of the security which she had theretofore given them; for it appears without contradiction that at the very time her attorney was engaged in drawing up such mortgages Mrs. Hawley was assuring the plaintiffs that, if they would defer entering their judgment for a few hours longer, she would send for her father, and have him pay the same. This. certainly was a gross fraud, and one which should not be permitted to deprive the plaintiffs of the benefit which, but for such fraud, they would have obtained. Neither should it operate to postpone their judgment so as to make it subordinate to the defendants' chattel mortgages. Clark v. Taylor, 37 Hun, 312; Claflin Co. v. Arnheim, 87 Hun, 236, 33 N. Y. Supp. 1037. Moreover, this case is by no means free from suspicious circumstances so far as the mortgagees are concerned. In the first place, there is an utter absence of any proof that either of the mortgagees was a bona fide creditor of the mortgagor. One of them was her father; another was her mother;. and these two she attempted to prefer in an amount considerably larger than the sum owing by her to the plaintiffs, although she had previously assured the latter that she owed but little aside from their claim. Again, at least two of the mortgagees, as has been stated, knew nothing of the mortgages given for their benefit until after they had been placed on file; and there are circumstances in the case which create a very strong presumption that the same is. true of the other mortgagees, with the exception of the mortgagor's parents. Among such circumstances may be mentioned the fact that the mortgages were executed at Corning, in the nighttime, and.

secretly; that all of the mortgagees were nonresidents of that city, and that none of them, aside from the relatives, was seen there at the time the mortgages were executed; and, furthermore, that they absented themselves from the trial, and studiously refrained from giving any evidence as to their relations with Mrs. Hawley. There are still other circumstances in the case which bear with more or less weight upon this question, but we think those to which reference has just been made are sufficient, as has already been suggested, to sustain the conclusion of the learned trial court that all of the defendants' mortgages are fraudulent in fact, and consequently void as against the plaintiffs' judgment, execution, and levy.

We have examined the various exceptions to the admission and rejection of evidence to which our attention has been directed without discovering that they present any prejudicial error, and, in our opinion, the judgment appealed from should, consequently, be affirmed.

Judgment affirmed, with costs. All concur, except SPRING, J., not voting.